T.C. Memo. 2001-23

UNITED STATES TAX COURT

SEYMOUR AND BEATRICE LEFFERT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18802-98.                    Filed January 31, 2001.

Seymour Leffert, pro se.

<u>Thomas J. Kerrigan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  On September 18, 1998, respondent issued a
notice of final determination disallowing petitioners' claim for
abatement of interest relating to petitioners' 1982 and 1983
taxable years.  Petitioners timely filed a petition under section
6404(g)[1] and Rule 280.[2]  The only issue for decision is whether

_____

[1]Sec. 6404(g) was redesignated sec. 6404(i) by the Internal
                                                (continued...)

respondent's denial of petitioners' claim for abatement of interest that accrued from December 31, 1988, through August 1997 for petitioners' 1982 and 1983 taxable years was an abuse of discretion.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioners resided in Woodbury, New York, when they filed their petition in this case. They filed joint individual income tax returns for 1982 and 1983. During 1982 and 1983, Mr. Leffert was a certified public accountant, and Mrs. Leffert was a teacher.

Mr. Leffert's Investment in Blue Gem Associates

In or about 1982, Mr. Leffert invested in 7201 Associates, a general partnership that acquired a limited partnership interest in Blue Gem Associates (Blue Gem), a coal mining limited partnership that was subject to the unified audit and litigation provisions of the Tax Equity & Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 324, 648.

---

[1](...continued)
Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, secs. 3305(a), 3309(a), 112 Stat. 685, 743, 745.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended. All Rule references are to the Tax Court Rules of Practice and Procedure.

On June 25, 1985, Blue Gem's Forms 1065, U.S. Partnership Return of Income, for 1982 and 1983 were selected for examination by the Internal Revenue Service (IRS).  The examination of Blue Gem's partnership returns for 1982 and 1983 was assigned to Revenue Agent Charles Vassalo and was conducted from approximately July 1985 through February 1988.

On July 22, 1985, Revenue Agent Vassalo sent an appointment letter to John Herbst, the tax matters partner of Blue Gem (the Blue Gem TMP).[3]  On July 26, 1985, the appointment letter was returned to the sender as undeliverable.  On August 5, 1985, Revenue Agent Vassalo attempted to contact the Blue Gem TMP by telephone and left a message for him at his place of business.  That same day, Revenue Agent Vassalo received a telephone call from Irving Kratz, a certified public accountant who had prepared Blue Gem's 1982 and 1983 partnership returns, concerning the Blue Gem examination.  Revenue Agent Vassalo continued to deal primarily with Mr. Kratz during the Blue Gem examination.

---

[3]Under the TEFRA unified audit and litigation provisions, a properly functioning tax matters partner (TMP) is critical to an efficient and fair partnership audit since the TMP bears responsibility for notifying partners of developments and ensuring that partners have a meaningful opportunity to participate in the partnership proceeding.  In keeping with a TMP's statutory and regulatory responsibilities, the TMP acts as a fiduciary whose actions will affect the rights of all partners in the partnership.  See Phillips v. Commissioner, 114 T.C. 115, 120-121 (2000).

On August 9, 1985, Revenue Agent Vassalo requested approval to begin a TEFRA flowthrough examination with respect to Blue Gem. His request was approved by the IRS District Director on August 23, 1985. On September 4, 1985, the IRS sent a notice of the beginning of an administrative proceeding (NBAP) to the Blue Gem TMP. On November 20, 1985, NBAP's were sent to all notice partners of Blue Gem, including 7201 Associates.

Revenue Agent Vassalo held meetings, conducted interviews, arranged for the preparation of an IRS engineering report, and otherwise continued his examination of Blue Gem through November 1986.

On November 5, 1986, representatives of the IRS and the Blue Gem TMP executed Forms 872-O, Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership (special consents), which extended the period of limitations on assessment for Blue Gem's 1982 and 1983 years indefinitely. Although the special consents could have been terminated if Blue Gem had submitted to the IRS a Form 872-N, Notice of Termination of Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, none was ever submitted.[4] The special consents were still in effect when respondent issued notices of

[4]If a Form 872-N, Notice of Termination of Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, had been submitted, respondent would have had 90 days to issue a notice of final partnership administrative adjustment.

final partnership administrative adjustment (FPAA) to the Blue Gem TMP and notice partners for the partnership's 1982 and 1983 years.

From November 5, 1986, when the special consents were signed, to January 1988, the record is silent regarding what, if anything, was done by Revenue Agent Vassalo or by any other IRS representative in connection with the Blue Gem examination.  On January 25, 1988, the Blue Gem Associates case was transferred from Revenue Agent Vassalo to Revenue Agent Melquiades Bravo for purposes of closing the case.  On February 10, 1988, Revenue Agent Bravo forwarded the 60-day package, consisting of Letter 1827, 60-day letter, Form 870-L, Agreement to Assessment and Collection of Deficiencies in Tax for Partnership Adjustments, Additions to Tax, and Affected Items, and Form 4605-A, Revenue Agent Report (collectively, the 60-day letter), to the Brookhaven Service Center for mailing to the Blue Gem TMP and all notice partners.

On August 22, 1988, the IRS mailed a 60-day letter to the Blue Gem TMP and notice partners of Blue Gem, proposing to adjust the partnership's 1982 and 1983 returns.

On September 20, 1988, the Brookhaven Service Center received a protest from 7201 Associates contesting the proposed adjustments in the 60-day letter and requesting an Appeals conference.  Mr. Leffert filed the protest on behalf of 7201

Associates.  Neither the Blue Gem TMP nor any other notice partner filed a protest.  On October 18, 1988, the protest was forwarded to the Manhattan District Office of the IRS for consideration.

December 31, 1988, Through March 13, 1990

On March 30, 1989, a case manager in the Manhattan District Office reviewed the protest and concluded that the protest was acceptable for processing by the IRS's Appeals Office in New York City.  On June 5, 1989, the Blue Gem case was assigned to Appeals Officer Stephen Koniarski.

On June 20, 1989, Appeals Officer Koniarski sent a letter to the Blue Gem TMP advising him that the Blue Gem case had been referred to the New York City Appeals Office for consideration. A copy of the letter was not sent to either 7201 Associates or to Mr. Leffert.  In the letter, Mr. Koniarski also stated he would contact the Blue Gem TMP by July 5, 1989, to schedule a mutually convenient Appeals conference regarding the case.

On June 20, 1989, Appeals Officer Koniarski called Mr. Kratz to discuss the Blue Gem case.  Mr. Kratz, however, advised Mr. Koniarski he was no longer representing Blue Gem.  On July 5, 1989, Appeals Officer Koniarski called Mr. Leffert and advised him that the Blue Gem case had been referred to the New York City Appeals Office for consideration.

On October 26, 1989, Appeals Officer Koniarski sent letters to all Blue Gem notice partners, including 7201 Associates, scheduling an Appeals conference for November 16, 1989, and advising the partners of their right to participate in the proceedings. None of the notice partners responded to Mr. Koniarski's letters. Mr. Leffert has no record of receiving the letter Mr. Koniarski sent to 7201 Associates.

On February 2, 1990, Appeals Officer Koniarski scheduled a March 12, 1990, conference with Mr. Leffert to discuss a possible settlement of the Blue Gem case. On March 1, 1990, Mr. Koniarski sent a letter to the Blue Gem TMP, scheduling a March 13, 1990, conference.

On March 12, 1990, Appeals Officer Koniarski and Mr. Leffert attended the scheduled conference. At the conference, Mr. Leffert proposed a "cash-out-of-pocket" settlement that would have required the IRS to allow Mr. Leffert the partnership losses claimed for 1982 and 1983 attributable to Blue Gem to the extent of his actual cash investment. On March 13, 1990, Appeals Officer Koniarski sent a letter to Mr. Leffert rejecting the settlement proposal Mr. Leffert had submitted at their March 12, 1990, conference. Mr. Koniarski's letter stated in pertinent part:

> Please find enclosed copy of Engineering Report that you requested at our March 12, 1990 conference. I have given consideration to your proposal for settlement made at the conference based on out of

pocket cash and have deemed that settlement inappropriate. Based on analysis of the facts in the case as well as a review of the relevant court cases, I have decided to maintain the position that a full concession of all losses claimed by the partnership is warranted. The one area that I may be able to offer a concession is regarding the assertion of the Section 6661 penalty.[5] If you have any additional information to submit or would like to discuss this matter further, please contact me at the above number.

Mr. Leffert has no record of receiving this letter.

No conference between Appeals Officer Koniarski and the Blue Gem TMP regarding the Blue Gem case was held on March 13, 1990.

March 14, 1990, Through October 22, 1995

After March 13, 1990, Appeals Officer Koniarski made several unsuccessful attempts to contact the Blue Gem TMP to schedule a conference. On May 8, 1992, Appeals Officer Koniarski sent a letter to the Blue Gem TMP requesting that the TMP contact him to discuss potential settlement of the Blue Gem case. The May 8, 1992, letter stated, in pertinent part:

I have made several unsuccessful attempts to contact you regarding the above-named partnership. I have scheduled several appointments which you have not appeared as well as you have not returned numerous telephone calls. In order that we may consider a potential settlement of this case, it is necessary that we hold a conference in order to explore potential settlements. Please contact me at the address and telephone number shown above.

---

[5]During the examination, the revenue agent, among other things, had learned that, contrary to what had been represented in the Blue Gem offering materials, the mining geologist whose report was included in those materials had not actually visited the partnership's mining property.

On March 8, 1994, Appeals Officer Koniarski sent the Blue Gem TMP another letter, requesting the TMP contact him to discuss potential settlement of the Blue Gem case. The March 8, 1994, letter was substantially similar to Mr. Koniarski's earlier May 8, 1992, letter to the TMP.

During the period from March 14, 1990, through October 22, 1995, Appeals Officer Koniarski also attempted to telephone the Blue Gem TMP. The dates of the telephone calls do not appear in the record. The Blue Gem TMP did not respond to any of the contacts made by Mr. Koniarski. With the exception of the letters and telephone calls described above, Mr. Koniarski did not work actively on the Blue Gem case during this period. Instead, he worked on other unrelated cases.

October 23, 1995, Through August 1997

On October 23, 1995, Appeals Officer Koniarski began preparing FPAA's and related documents with respect to Blue Gem's 1982 and 1983 partnership returns. In addition, Mr. Koniarski prepared a supporting statement recommending the issuance of the proposed FPAA and submitted it to supervisory personnel in the New York City Appeals Office. In his supporting statement, Mr. Koniarski recommended that most of the adjustments and penalties proposed by the examining agent with respect to Blue Gem and its partners should be included in the FPAA. He recommended, however, that the substantial understatement penalty proposed by

the examining agent should not be asserted against the Blue Gem

investors.  His supporting statement stated, in pertinent part:

> This case is being forwarded for the issuance of an FPAA.  This case involves a protest filed by one of the partnership investors.  No protest was filed by the TMP who has not been cooperative.

> \* \* \* \* \* \* \*

II. Proposals For Settlement:

> No settlement of the issues was possible.  It is therefore recommended that a FPAA be issued sustaining the Government's position in full with respect to all issues with the exception of the Section 6661 penalty issue.  It is recommended that this penalty be conceded.

> \* \* \* \* \* \* \*

Issue 3 - Section 6661

> At issue is whether the individual partners should be subject to the substantial understatement of tax liability penalty pursuant to IRC Section 6661. Although the Government's position with respect to the partnership was strong where no cash offer was deemed appropriate, the tax shelter was not deemed egregious from the point of view of the individual partners.  A review of the correspondence between the partnership and its investors give the appearance that the venture had much greater economic viability than it actually had.  It is therefore recommended that the issue be conceded.

On January 16, 1996, respondent issued FPAA's to the Blue

Gem TMP and all notice partners with respect to Blue Gem's 1982

and 1983 taxable years.  Neither the Blue Gem TMP nor any notice

partner filed a petition contesting the FPAA's in this Court or

any other appropriate court.  As a result, on June 16, 1996, the

period for filing such a petition expired, and the Blue Gem case

was "defaulted".[6]  See generally secs. 6225(a) and 6226(a)(1) and (b)(1).

On September 24, 1996, Appeals Officer Koniarski prepared "the FPAA default package" and forwarded it, along with the administrative file, to the Associate Chief of Appeals for approval.  On October 11, 1996, the Brookhaven Service Center received the FPAA default package for processing.

On February 3, 1997, the Brookhaven Service Center prepared examination work papers relating to Mr. Leffert's claimed deductions from Blue Gem for 1982 and 1983.  On February 27, 1997, Forms 4549-A, Income Tax Examination Changes, were issued to petitioners for 1982 and 1983.

On March 9, 1997, Mr. Leffert sent a letter to the Problem Resolution Office at the Brookhaven Service Center, objecting to the Forms 4549-A he had received and the large amount of interest that was to be assessed against petitioners.  Mr. Leffert complained that the IRS had inordinately delayed responding to his protest letter.  He maintained that, until receiving the Forms 4549-A, he had received no other correspondence from the IRS concerning the Blue Gem case for more than 8 years since filing his appeal.  Mr. Leffert claimed that the delay led him to

---

[6]Although the parties stipulated that the Blue Gem case was defaulted, they did not define the term "defaulted".  We understand the term to refer to the process of preparing to assess a proposed tax deficiency after a taxpayer fails timely to pursue available preassessment judicial remedies.

assume the IRS had closed the Blue Gem case without adjusting Blue Gem's 1982 and 1983 returns, thus confirming that the Blue Gem coal mining venture was a legitimate investment.

On March 24, 1997, the IRS made an assessment against petitioners of tax and interest attributable to the disallowance of Mr. Leffert's distributive share of Blue Gem losses for 1982 and 1983.

On April 3, 1997, the IRS sent a letter to Mr. Leffert responding to his March 9, 1997, letter. Though disagreeing with Mr. Leffert's claim that there had been an inordinate delay, the IRS advised him that he could file a Form 843, Claim for Refund and Request for Abatement, if he wished to dispute the interest assessed against him. The letter further advised Mr. Leffert that his request for abatement would be denied by the Service Center but that he could appeal that decision administratively.

On April 16, 1997, Mr. Leffert sent a letter to the IRS reiterating that he had never received notice of the IRS's decision concerning his earlier protest letter until about March 1997, when he had received the Forms 4549-A. He asked that some compromise be made allowing petitioners to pay interest only through December 31, 1988.

On August 11, 1997, petitioners filed their request for abatement of interest for 1982 and 1983. Their Form 843 stated in pertinent part:

In August, 1988 we were first notified of a proposed disallowance of Blue Gem.  We are requesting an abatement of interest from December, 1988 to present for the following reasons:

Our 1988 Appeal from the proposed disallowance was taken to the Tax Court and it took eight years for the overburdened court, after putting it on the docket, to issue a 1996 decision.[7]

The decision was issued in favor of the government's position since the TMP of Blue Gem was uncooperative.

In that ensuing eight year period we heard nothing from the Internal Revenue Service and had no idea of this inordinate length it would take to reach a decision. Had we known, we surely would have deposited the tax liability in 1988 to stop the running of interest.

We are in dispute as to the timely assessment of interest due to the inordinate delay of eight years and we respectfully request an abatement from December 31, 1988.  We have no way of calculating the interest due to December 31, 1988 and have therefore left Item 2 [i.e., the amount of interest to be abated] blank.

Surely the Internal Revenue Service should not penalize a taxpayer for an eight year Tax Court delay in rendering a decision.  It would seem that this case would fall under the term "Ministerial Act".

*     *     *     *     *     *     *

Had we not appealed the IRS decision we would have paid the tax and interest to December 31, 1988.  Because we appealed we are being penalized for an eight year delay

---

[7]Contrary to petitioners' explanation, neither the TMP nor any notice partner filed a petition in this Court for redetermination of the partnership adjustments proposed in the FPAA's issued with respect to Blue Gem.  In fact, the Blue Gem case was "defaulted" administratively because a timely judicial proceeding was not filed in any court following the mailing of the FPAA's.  We also note that petitioners' claim that they "heard nothing from the Internal Revenue Service" during an 8-year period was not accurate, as our findings of fact reflect.

in processing our appeal.  It seems both unfair and undue hardship.

On September 18, 1998, respondent issued to petitioners a notice of final determination denying their request for abatement of interest for 1982 and 1983.  In his notice, respondent stated that he had not found any errors or delay in the period from December 1988 through August 1997 relating to the performance of a ministerial act.

OPINION

Under section 6404(e)(1), the Commissioner may abate part or all of an assessment of interest on any deficiency or payment of income tax to the extent that any error or delay in payment is attributable to erroneous or dilatory performance of a ministerial act by an officer or employee of the IRS.[8]  A ministerial act means a procedural or mechanical act that does not involve the exercise of judgment or discretion and occurs during the processing of a taxpayer's case after all the prerequisites to the act, such as conferences and review by supervisors, have taken place.  See Lee v. Commissioner, 113 T.C. 145 (1999); sec. 301.6404-2T(b)(1), Temporary Proced. & Admin.

---

[8]Sec. 6404(e) was amended by the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1452, 1457 (1996), to permit the Commissioner to abate interest with respect to an "unreasonable" error or delay resulting from "managerial" or ministerial acts.  The amendment applies to interest accruing with respect to deficiencies for taxable years beginning after July 30, 1996, and is inapplicable to the instant case.

Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).[9]  In contrast, a decision concerning the proper application of Federal tax law, or other applicable Federal or State laws, is not a ministerial act. See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).  The mere passage of time does not establish error or delay in performing a ministerial act. See Cosgriff v. Commissioner, T.C. Memo. 2000-241 (citing Lee v. Commissioner, supra at 150).

When Congress enacted section 6404(e), it did not intend the provision to be used routinely to avoid payment of interest. Rather, Congress intended abatement of interest only where failure to do so "would be widely perceived as grossly unfair." H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208. Section 6404(e) affords a taxpayer relief only if no significant aspect of the error or delay can be attributed to the taxpayer. In addition, interest may be abated only after the Commissioner

---

[9]The final regulations under sec. 6404 were issued on Dec. 18, 1998.  The final regulations generally apply to interest accruing with respect to deficiencies or payments of tax described in sec. 6212(a) for taxable years beginning after July 30, 1996.  See sec. 301.6404-2(d)(1), Proced. & Admin. Regs.  As a result, sec. 301.6404-2T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987), applies and is effective for interest accruing with respect to deficiencies for those taxable years beginning after Dec. 31, 1978, but before July 30, 1996. See id. at par. (c).

has contacted the taxpayer in writing about the deficiency or payment in question.  See sec. 6404(e).

Petitioners requested that respondent abate interest for the period from December 31, 1988, through August 1997.  Respondent denied petitioners' request, claiming that the record does not disclose any erroneous or dilatory performance of a ministerial act by an officer or employee of the IRS, and issued a notice of final determination to petitioners.  Petitioners filed a timely petition to contest respondent's determination.  We have jurisdiction to decide whether respondent abused his discretion in determining that no interest abatement was appropriate.  We shall organize and conduct our analysis by segmenting it into the relevant time periods.

## December 31, 1988, Through March 13, 1990

Following the receipt of Mr. Leffert's protest letter by the Brookhaven Service Center, a case manager in the Manhattan District Office determined, on March 30, 1989, that the letter should be processed by the New York City Appeals Office.  As a result, Appeals Officer Koniarski was assigned the Blue Gem case on June 5, 1989.  Mr. Koniarski then attempted to schedule conferences with the Blue Gem TMP and any interested notice partners, including 7201 Associates (on whose behalf Mr. Leffert had filed the protest letter).

As indicated in his March 13, 1990, letter to Mr. Leffert, Appeals Officer Koniarski reviewed the administrative file on the Blue Gem case and considered applicable law before rejecting the settlement proposal that Mr. Leffert had submitted to him at their conference on March 12, 1990.[10]  Mr. Koniarski's action in interpreting and applying applicable legal principles to the facts of the Blue Gem case is not a ministerial act.  See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).  In addition, it appears that Mr. Koniarski, after considering his caseload and the requirements imposed by the TEFRA unified audit and litigation provisions to afford the Blue Gem TMP and other notice partners an opportunity to participate in the administrative appeals process, acted expeditiously in scheduling and holding the March 12, 1990, conference with Mr. Leffert.  Moreover, we can identify no error or delay on the part of Mr. Koniarski or any other officer or employee of the IRS in performing a ministerial act that would provide a basis for abating interest accruing during this time period.

---

[10]The parties have stipulated that, on Mar. 13, 1990, Appeals Officer Koniarski sent the Mar. 13, 1990, letter to Mr. Leffert at Mr. Leffert's then accounting office address.  The record does not disclose, however, whether the letter was actually delivered to Mr. Leffert's office or why Mr. Leffert has no record of receiving the letter.

March 14, 1990, Through October 22, 1995

The record discloses only sporadic and inattentive IRS activity in the Blue Gem case with respect to the period from March 14, 1990, through October 22, 1995.  During this 5-year period, Appeals Officer Koniarski appears to have worked on the Blue Gem case only intermittently for brief amounts of time. Indeed, in his testimony at trial, Mr. Koniarski acknowledged that no further factual development of the case was needed during this period because all necessary factual development had been completed during the revenue agent's earlier examination.

The record further reveals that neither the Blue Gem TMP nor any of the notice partners except 7201 Associates chose to participate in the administrative appeal of the Blue Gem case. As Appeals Officer Koniarski stated in his supporting statement recommending issuance of FPAA's with respect to Blue Gem's 1982 and 1983 taxable years, the Blue Gem TMP never filed any protest; the only protest filed was Mr. Leffert's protest letter on behalf of 7201 Associates.

In his testimony, Appeals Officer Koniarski claimed the Blue Gem TMP had been uncooperative, and Mr. Koniarski attributed his inability to close out and conclude the Blue Gem case sooner, in part, to this lack of cooperation by the Blue Gem TMP.  The Blue Gem TMP had postponed the Appeals conference originally scheduled by Mr. Koniarski.  According to Mr. Koniarski, his subsequent

attempts to reschedule an Appeals conference were unsuccessful because the Blue Gem TMP ignored and never responded to his telephone messages and letters regarding the scheduling of a conference.[11]

Appeals Officer Koniarski explained his remarkable patience and occasional persistence during this time period by pointing out that he was attempting to evaluate what additions to tax and penalties, if any, should be imposed in the Blue Gem case. According to Mr. Koniarski, information from the Blue Gem TMP may have had a material impact on his decision-making process, and he did not want to deprive the Blue Gem investors of a fully developed record regarding the additions to tax and penalties. Mr. Koniarski also testified that, during this time period, he was working on other cases when he was not working on the Blue Gem case.

Reduced to its essence, the record discloses that Appeals Officer Koniarski made a few attempts to contact the Blue Gem TMP during this time period. The rest of the time Mr. Koniarski worked his other cases. In short, what we must examine in the context of section 6404 is Mr. Koniarski's management of his caseload.

---

[11]Appeals Officer Koniarski testified that, in addition to his May 8, 1992, and March 8, 1994, letters to the Blue Gem TMP, he made a number of telephone calls to the Blue Gem TMP during this period that were never returned.

Under section 6404(e), petitioners must demonstrate that an officer or employee of the IRS erred or was dilatory in performing a ministerial act.  By definition, a ministerial act is one that is procedural or mechanical; it does not involve the exercise of managerial discretion or judgment.  See Lee v. Commissioner, 113 T.C. 145 (1999); sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).

Our review of the record in this case convinces us that the decision of Appeals Officer Koniarski to order his work affairs based on his caseload priorities was not a ministerial act as that term is defined in section 6404.[12]  See Jacobs v. Commissioner, T.C. Memo. 2000-123; see also sec. 301.6404-2T(b)(2), Example (5), Temporary Proced. & Admin Regs., 52 Fed.

---

[12]At trial, the Court questioned Appeals Officer Koniarski and his supervisor closely as to whether the IRS had established any specific time limits by which an Appeals officer should have completed his consideration of a case.  They testified that there were no specific time limits and that the processing of a case was a matter largely left to the judgment and discretion of the individual Appeals officer.  The supervisor further testified that periodic reviews were conducted to monitor the progress made on the cases assigned to an Appeals officer and that an Appeals officer's caseload work priorities sometimes were readjusted, particularly where some of the assigned cases were docketed in court.  An examination of the Internal Revenue Manual's provisions pertaining to the Appeals function disclosed no specific time limits for closing out a case.  Although the stated mission of the Appeals Office, among other things, includes affording a taxpayer a prompt conference and a prompt final decision by the IRS, how and when a case is worked is left, in large part, to the judgment and discretion of the Appeals officer.

Reg. 30163 (Aug. 13, 1987). Mr. Koniarski's decision whether and when to work on the Blue Gem case involved the exercise of judgment based on an evaluation of his entire caseload and his workload priorities. As unfortunate as his decision may have been in hindsight, it did not involve the erroneous or dilatory performance of a ministerial act.[13]

October 23, 1995, Through August 1997

From October 23, 1995, through August 1997, we are satisfied that Appeals Officer Koniarski and other IRS employees were working steadily on the Blue Gem case to bring the matter to a close. Beginning October 23, 1995, Mr. Koniarski prepared the proposed FPAA's and other related documents to be issued to Blue Gem and its partners. Following appropriate review by supervisory personnel in the New York City Appeals Office, the FPAA's were issued on January 16, 1996. On June 16, 1996, the Blue Gem case was defaulted after the TMP and the notice partners failed to file a timely petition in the Tax Court or any other appropriate court. The default package was then prepared and

---

[13]The sparse record of activity by the IRS in the Blue Gem case during the period from Mar. 14, 1990, through Oct. 22, 1995, is difficult to justify. Because an unlimited consent extending the period of limitations on assessment was executed on behalf of Blue Gem, no time pressure was placed on the IRS to complete its consideration of the Blue Gem case. And, because neither the Blue Gem TMP nor an authorized representative of Blue Gem was involved in the Blue Gem administrative appeal, there was no one in a position of authority with respect to Blue Gem to press for a resolution.

processed, petitioners were mailed examination workpapers for 1982 and 1983, and assessments of additional tax and interest for those years were made against petitioners on March 24, 1997. From about March through August 1997, petitioners and the IRS corresponded with respect to that tax liability.

On the basis of the foregoing, we conclude that there were no errors or delay in the performance of ministerial acts by respondent's officers or employees from October 23, 1995, through August 1997.

Conclusion

A careful review of the record in this case fails to disclose any erroneous or dilatory performance of a ministerial act by an officer or employee of respondent with respect to respondent's processing of adjustments to petitioners' 1982 and 1983 individual income tax returns.  Consequently, we hold that respondent's denial of petitioners' claim for abatement of interest that accrued from December 31, 1988, through August 1997 with respect to deficiencies resulting from the Blue Gem partnership audit was not an abuse of discretion.

To reflect all of the above,

Decision will be entered

for respondent.