113 T.C. No. 10

UNITED STATES TAX COURT

WILLIAM GRANT LEE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7263-97.                    Filed August 18, 1999.


        P and his former wife claimed losses from a tax
shelter partnership on their 1980 Federal income tax
return.  In April 1984, R issued a notice of deficiency
denying those losses.  In July 1984, P filed a petition
in this Court contesting the denial of the losses.

        P's case was not resolved until 1995 when P and R
entered a settlement agreement.  Pursuant to the
settlement agreement, the Court entered a decision that
there was a deficiency in P's Federal income tax for
1980.  In 1995, R granted P's former wife innocent
spouse relief pursuant to sec. 6013(e), I.R.C.

        Pursuant to sec. 6404(e), I.R.C., P requested an
abatement of interest on his 1980 Federal income tax.
In November 1996, R issued a notice of final
determination denying P's claim to abate interest.  P
filed a petition for review of R's failure to abate
interest.

    Held:  R's failure to abate interest was not an
abuse of discretion.


    William Grant Lee, pro se.

    Christian A. Speck, for respondent.


    VASQUEZ, Judge:  On November 5, 1996, respondent issued a

notice of final determination denying petitioner's claim to abate

interest pursuant to section 6404(e).[1]

    The sole issue for decision is whether petitioner is

entitled to an abatement of interest pursuant to section 6404(e).

                         FINDINGS OF FACT

    Some of the facts have been stipulated and are so found.

The stipulation of facts and the attached exhibits are

incorporated herein by this reference.

    At the time the petition was filed, petitioner resided in

Benicia, California, and his net worth did not exceed $2 million.

Petitioner has a college degree in petroleum engineering, and in

1980, he worked as a systems engineer.

    During the late 1970's and early 1980's, William Kilpatrick

(Mr. Kilpatrick) promoted a tax shelter for the alleged purpose

of producing alternative fuels (Kilpatrick shelter).  In 1980, on

account of the extraordinary income he received in that year,

petitioner invested in the Kilpatrick shelter by purchasing an

───────────────

    [1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue.

interest in General Investment Group (GIG) partnership. GIG was a partner in Salmon Realty partnership. Salmon Realty was one of many partnerships which made up the Kilpatrick shelter.

Petitioner and Vida Lee (his former spouse)[2] filed a joint Federal income tax return for 1980 (1980 return) claiming partnership losses from GIG totaling $20,705. On April 12, 1984, respondent issued a notice of deficiency to petitioner and Vida Lee disallowing the partnership losses of GIG. Respondent issued similar notices of deficiency to other investors in GIG.

On July 2, 1984, with petitioner's knowledge and on behalf of petitioner and other investors in GIG, Declan O'Donnell (Mr. O'Donnell), an attorney, filed a petition in this Court contesting respondent's disallowance of GIG's losses (the GIG case). Mr. O'Donnell filed numerous other petitions on behalf of investors in other Kilpatrick shelter partnerships contesting respondent's disallowance of similar losses (collectively, the civil cases).

In 1979, the Securities and Exchange Commission (SEC) began investigating Mr. Kilpatrick and Mr. O'Donnell regarding their promotion of interests in the Kilpatrick shelter. In 1982, in a 27-count indictment, Mr. Kilpatrick and Mr. O'Donnell were charged with conspiracy to defraud the Internal Revenue Service (IRS) by claiming false partnership deductions in violation of 18

---

[2] In 1989, petitioner and Vida Lee divorced.

U.S.C. section 371 and for willfully aiding or assisting in the preparation or presentation of returns which were false or fraudulent in violation of section 7206(2).

The criminal cases against Mr. Kilpatrick and Mr. O'Donnell began in 1982 and continued through December 1989. This included (1) an appeal to the U.S. Court of Appeals for the Tenth Circuit, (2) a grant of certiorari by the U.S. Supreme Court (Supreme Court), (3) a decision by the Supreme Court remanding to the Federal District Court, (4) an acquittal by the Federal District Court on 26 of the 27 counts, and (5) a dismissal of the 27th count by the Department of Justice.

In 1985, the Court assigned the civil cases to Judge Whitaker. Neither petitioner nor Mr. O'Donnell filed a motion to calendar the GIG case.

Initially, respondent did not file a motion to calendar the civil cases because the Government chose to conclude the criminal cases against Mr. Kilpatrick and Mr. O'Donnell first. Respondent chose this litigation strategy for several reasons. If respondent had chosen instead to proceed first with the civil cases, many of his potential witnesses at the civil trials might have had legitimate Fifth Amendment claims as a result of the ongoing criminal proceedings. Respondent also intended to use information obtained in the ongoing grand jury proceedings in the civil trials, to the extent permissible. Further, respondent intended to call witnesses in the criminal trials who resided

outside the United States and, hence, outside the subpoena power of this Court. Respondent hoped to introduce testimony given by these witnesses in the criminal trials into the record of the civil trials.

After the conclusion of the criminal trials against Mr. Kilpatrick and Mr. O'Donnell, the proceedings in the GIG case were further delayed because of several procedural motions on the part of respondent and by Mr. O'Donnell's filing of so-called Kelley motions to dismiss because of the expiration of the period of limitations. The parties litigated the Kelley motions all the way to the Supreme Court. The Supreme Court eventually ruled on the motions.

In or around December 1993, the Tax Court calendared the GIG case for trial on February 6, 1995.

Around October 1994, Mr. O'Donnell withdrew as counsel in the GIG case because of (1) a lack of communication with his clients and (2) respondent's intention to call Mr. O'Donnell as a witness in the civil trials. Before Mr. O'Donnell's withdrawal, respondent dealt with Mr. O'Donnell with respect to the GIG case. After Mr. O'Donnell withdrew, respondent immediately began directly contacting petitioner concerning the GIG case.

As of 1984, the IRS proposed settlement offers to the investors of the Kilpatrick shelter and a substantial number of investors accepted. In March 1995, petitioner accepted a settlement offer from respondent. Pursuant to the settlement,

the Court entered a decision that petitioner owed a deficiency in income tax for 1980.  Sometime before November 1996, the interest liability was assessed.  In 1995, respondent granted Vida Lee innocent spouse relief pursuant to section 6013(e).

### OPINION

Section 6404(e)(1) provides, in pertinent part, that the Secretary may abate the assessment of interest on any payment of tax to the extent that any error or delay in payment is attributable to an officer or employee of the IRS being erroneous or dilatory in performing a ministerial act.[3]  For purposes of section 6404(e)(1), an error or delay is taken into account only (1) if no significant aspect of such error or delay can be attributed to the taxpayer and (2) after the IRS has contacted the taxpayer in writing with respect to such deficiency or payment.  See sec. 6404(e)(1).

This Court may order abatement where the Secretary abuses his discretion by failing to abate interest.  See sec. 6404(i). In order to prevail, the taxpayer must demonstrate that in not abating interest the Secretary exercised his discretion

---

[3]  In 1996, sec. 6404(e) was amended under sec. 301 of the Taxpayer Bill of Rights 2, Pub. L. 104-168, 110 Stat. 1452, 1457 (1996), to permit the Secretary to abate interest with respect to an "unreasonable" error or delay resulting from "managerial" and ministerial acts.  This amendment, however, applies to interest accruing with respect to deficiencies or payments for tax years beginning after July 30, 1996; therefore, the amendment is inapplicable to the case at bar.  See Woodral v. Commissioner, 112 T.C. 19, 25 n.8 (1999).

arbitrarily, capriciously, or without sound basis in fact or law. See <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).

When enacting section 6404(e), Congress intended for the Commissioner to abate interest "where failure to abate interest would be widely perceived as grossly unfair." H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208. Congress, however, did not intend that abatement "be used routinely to avoid payment of interest." <u>Id.</u>

This is our first occasion to decide what constitutes a ministerial act for purposes of section 6404(e). Section 6404(e) does not define what is meant by the term "ministerial act".

The legislative history behind the enactment of section 6404(e) provides guidance to what Congress deemed to be a ministerial act. The House Ways and Means Committee report (House report) and the Senate Finance Committee report (Senate report) state:

> the term "ministerial act" [should] be limited to nondiscretionary acts where all of the preliminary prerequisites, such as conferencing and review by supervisors, have taken place. Thus, a ministerial act is a procedural action, not a decision in a substantive area of tax law. * * * [H. Rept. 99-426, <u>supra</u> at 845, 1986-3 C.B. (Vol. 2) at 845; S. Rept. 99-313, <u>supra</u> at 209, 1986-3 C.B. (Vol. 3) at 209.]

The House report and the Senate report also provide examples of what constitutes a delay in performing a ministerial act. The House report states:

an unreasonable delay in the issuance of a statutory
notice of deficiency after the IRS and the taxpayer
have completed efforts to resolve the matter would be
grounds for abatement of interest.  [H. Rept. 99-426,
supra at 845, 1986-3 C.B. (Vol. 2) at 845.]

The Senate report states:

a delay in the issuance of a statutory notice of
deficiency after the IRS and the taxpayer have
completed efforts to resolve the matter could be
grounds for abatement of interest.  * * *  [S. Rept.
99-313, supra at 209, 1986-3 C.B. (Vol. 3) at 209.]

Temporary regulations issued by the Secretary provide a definition for "ministerial act" and provide numerous examples of what is or is not an error or delay in performing a ministerial act.  See sec. 301.6404-2T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).  Section 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., supra, states:

The term "ministerial act" means a procedural or
mechanical act that does not involve the exercise of
judgment or discretion, and that occurs during the
processing of a taxpayer's case after all prerequisites
to the act, such as conferences and review by
supervisors, have taken place.  A decision concerning
the proper application of federal tax law (or other
federal or state law) is not a ministerial act.

Petitioner's Arguments

Petitioner argues that some or all of the interest[4] on his 1980 tax liability should be abated pursuant to section 6404(e).

---

[4]  Petitioner, however, conceded in his trial memorandum and at trial that he was responsible for interest accruing before 1986.  We, therefore, address only whether petitioner is entitled to an abatement of interest as of Jan. 1, 1986.

Petitioner alleges that respondent committed three ministerial errors to which delay in payment of his 1980 tax may be attributed.

A.  Length of Time in Disposing of Case

Petitioner claims that the 11-year span from the issuance of the notice of deficiency in 1984 until petitioner entered a settlement agreement with respondent in 1995 constitutes a ministerial error by respondent and warrants an abatement of interest.

The mere passage of time in the litigation phase of a tax dispute does not establish error or delay by the Commissioner in performing a ministerial act.  The length of time required to resolve the GIG case was a result of the Government's litigation strategy to dispose of the criminal indictments first and the Court's disposition of the parties' procedural motions. Respondent's decision on how to proceed in the litigation phase of the case necessarily required the exercise of judgment and thus cannot be a ministerial act.  We, therefore, conclude that the passage of 11 years in the litigation phase of the case at bar is not attributable to error or delay in performing a ministerial act.[5]

---

[5]  Additionally, we note that in the interests of justice Federal courts commonly defer civil proceedings pending the completion of parallel criminal prosecutions.  See United States

(continued...)

B.  Granting of Innocent Spouse Relief

Petitioner also contends that respondent's grant of innocent spouse relief to his former wife Vida Lee was a ministerial error.

Generally, a husband and wife may file a joint return, and, where they do so, they are jointly and severally liable for tax. See sec. 6013(d)(3).  Former section 6013(e) set out four requirements which, if met, provided relief for the so-called innocent spouse from joint and several liability.[6]  Respondent's determination of whether these requirements were met required the exercise of judgment and discretion by respondent and thus could not be a ministerial act.

C.  Misinformation and Lack of Information

Petitioner contends that respondent committed several ministerial errors due to respondent's failure to communicate relevant information and respondent's communication of misinformation to petitioner.

---

[5](...continued)
v. Kordel, 397 U.S. 1, 12 n.27 (1970).

[6]  Former sec. 6013(e)(1) provided innocent spouse relief where:  (1)  A joint Federal income tax return was filed for the year in issue; (2) there was a substantial understatement of tax on that return attributable to grossly erroneous items of the other spouse; (3) in signing the income tax return, the claimed innocent spouse did not know or have reason to know of the substantial understatement; and (4) it would be inequitable to hold the claimed innocent spouse liable for the deficiency in question.

Petitioner contends that respondent failed to contact petitioner in regard to his 1980 deficiency during the pendency of the GIG case prior to 1994, and this led to petitioner's delay in payment of his 1980 tax. Prior to 1994, petitioner was represented by Mr. O'Donnell, and respondent was restricted by ethical considerations from directly contacting petitioner about his 1980 deficiency without Mr. O'Donnell's consent. See Model Rules of Professional Conduct Rule 4.2 (1998). During this time, however, respondent did contact Mr. O'Donnell on a number of occasions to discuss the GIG case and the outstanding settlement offers. We therefore conclude that petitioner's argument that respondent failed to contact him is without merit.

Petitioner also claims that during two telephone conversations with IRS agents concerning petitioner's 1981 and 1989 taxable years, respondent communicated misinformation to him which constituted a ministerial error. Petitioner alleges that respondent misled him into believing that his 1980 deficiency had been settled.

During these conversations, petitioner intentionally asked vague questions about whether unrelated issues in his 1981 and 1989 taxable years affected the 1980 taxable year. Petitioner never told the IRS agents that a notice of deficiency had been issued relating to his 1980 taxable year. When the IRS employees stated that they knew nothing about petitioner's 1980 taxable

year, petitioner interpreted these statements to mean that his 1980 deficiency had been settled. Given the scarcity of information provided to the IRS employees by petitioner and the vagueness of petitioner's questions, we find that the IRS employees answered petitioner's questions correctly. Assuming arguendo that these answers qualify as ministerial acts, the evidence failed to show that respondent's answers were erroneous or dilatory.

D. <u>Conclusion</u>

We conclude that respondent did not abuse his discretion in denying petitioner's claim for abatement of interest. To the extent not herein discussed, we have considered petitioner's other arguments, and we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.