T.C. Memo. 2000-369

UNITED STATES TAX COURT

LARRY D. & GAIL SCOTT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3509-99.                    Filed December 7, 2000.

Larry D. & Gail Scott, pro sese.

<u>Susan Smith Canavello</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Lewis R. Carluzzo pursuant to section 7443A(b)(5) and Rules
180, 181, and 183.[1]  The Court agrees with and adopts the opinion
of the Special Trial Judge, which is set forth below.

---

[1] Unless otherwise indicated, section references are to the
Internal Revenue Code in effect at the time that the petition was
filed in this case.  Rule references are to the Tax Court Rules
of Practice and Procedure.

OPINION OF THE SPECIAL TRIAL JUDGE

CARLUZZO, Special Trial Judge:  On September 16, 1998, respondent issued a notice of final determination denying petitioners' request to abate interest on income tax deficiencies for the years 1989 and 1990.  In response to the notice, petitioners filed a timely petition pursuant to section 6404(i).

The issue for decision is whether respondent's failure to abate interest assessed on petitioners' 1989 and 1990 income tax deficiencies was an abuse of discretion.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners are husband and wife.  At the time the petition was filed, petitioners resided in Lucedale, Mississippi, and their net worth did not exceed $2 million.  References to petitioner are to Larry D. Scott.

Petitioner is and was during all relevant times the sole proprietor of a general contracting business (the business).  A portion of petitioners' residence was used as an office in connection with the business.  During 1989 and 1990, the income petitioner earned and the expenses he incurred in connection with the business were reported on Schedules C, Profit or Loss From Business (Sole Proprietorship), included with the joint Federal income tax returns timely filed by petitioners for those years.

The specific items reported on the Schedules C are as follows:

|  | 1989 | 1990 |
|---|---|---|
| Income: | | |
| Gross receipts | $459,553 | $480,035 |
| Cost of goods sold | 358,976 | 363,056 |
| Gross income | 100,577 | 116,979 |
| Deductions: | | |
| Advertising | 769 | 1,821 |
| Commissions and fees | -0- | 29,650 |
| Car and truck expenses | 15,824 | -0- |
| Insurance | 5,678 | 5,837 |
| Interest (mortgage) | -0- | 7,540 |
| Interest (other than mortgage) | 9,101 | 8,135 |
| Legal and professional | 3,065 | 7,539 |
| Office expenses | 3,943 | 14,254 |
| Rent (other business property) | 1,493 | -0- |
| Supplies | 2,782 | 2,733 |
| Taxes | 689 | 790 |
| Travel | -0- | 19,612 |
| Meals and Entertainment | -0- | 568 |
| Utilities | 4,106 | 9,071 |
| Other Expenses | | |
| "Sub" | 65,565 | -0- |
| "Bk Chg" | 353 | 201 |
| Total | 113,368 | 107,751 |
| Net profit (loss) | (12,791) | 9,228 |

On each Schedule C, petitioners responded "No" to the question "Are you deducting expenses for the business use of your home?", although it appears that at least portions of certain deductions relate to the use of petitioners' residence in connection with the business.

The net loss from the business is the only item taken into account in the negative adjusted gross income reported on

petitioners' 1989 Federal income tax return; consequently, no section 1 income tax liability is reported on that return. Their 1989 return also reflects a section 1401 self-employment tax of $208.32, and an earned income credit of $222, resulting in a refund claim for $13.68.

The net profit from the business and a $12,791 "NOL" are the items included in the negative adjusted gross income reported on petitioners' 1990 Federal income tax return. As with 1989, no section 1 income tax is listed on the return, but petitioners reported a section 1401 self-employment tax of $1,303.87, which is partially offset by an earned income credit of $953.

Petitioners were first contacted in writing by respondent with respect to the examination of their 1989 and 1990 Federal income tax returns by letter dated June 6, 1991. Revenue Agent Judy Pearson (Ms. Pearson) conducted the examination. Ms. Pearson met with petitioner and/or their return preparer, Carol Reid (Ms. Reid), on several occasions and issued several information document requests to petitioners during the course of the examination. It appears that the examination focused primarily upon deductions claimed on the Schedules C. Because certain of those deductions related to payments made to petitioners' son, Ms. Pearson extended her examination to include the 1989 and 1990 Federal income tax returns of petitioners' son.

Ms. Pearson's examination of petitioners' returns was briefly interrupted for work-related training from March 16, 1992, to April 17, 1992. She also worked on other examinations from April 17, 1992, to June 13, 1992. A closing conference with petitioner, Ms. Reid, and petitioners' son was held on June 17, 1992. The examination was closed with the issuance of the revenue agent's report, dated June 26, 1992 (RAR).

Numerous adjustments are contained in the RAR. The cost of goods sold claimed for each year is reduced, as are a number of deductions. Deficiencies of $14,694 and $16,083 for the years 1989 and 1990, respectively, are proposed in the RAR.

By Report Transmittal dated July 6, 1992, (the T-Letter) the RAR was forwarded for review. In the T-Letter, Ms. Pearson recommended that an inadequate records notice be issued to the petitioners because petitioners' books and records were not sufficiently detailed. According to the T-Letter, business expenses could not be distinguished from personal expenses because petitioners kept business and personal records in one set of books. The T-Letter also notes that petitioners did not maintain a log to verify business use of an automobile.

Petitioners did not agree with the proposed adjustments to their income tax returns and, on August 5, 1992, their authorized representative, C. Ray Hunter (Mr. Hunter), requested a hearing with an Appeals Officer. By letter dated September 10, 1992,

Appeals Officer John Dennis Smith (Mr. Smith) from respondent's Appeals Office in Jackson, Mississippi (Appeals) advised petitioners that he had been assigned their case. However, Mr. Smith returned the case to the examination division on November 12, 1992, for further development.

Revenue Agent Phyllis Shearer (Ms. Shearer) was assigned to resume the examination. She met with Mr. Hunter on December 11, 1992, and had several telephone conversations with him after their meeting. At the conclusion of her examination, Ms. Shearer prepared a revised revenue agent's report (the revised RAR). In the revised RAR deficiencies of $9,032 and $11,853 for the years 1989 and 1990, respectively, are proposed. Petitioners did not agree with the proposed adjustments contained in the revised RAR and requested that the case be sent back to Appeals. On March 19, 1993, Ms. Shearer returned the case to Mr. Smith. On April 8, 1993, Mr. Smith notified petitioners that the case had been returned to him.

By letter dated April 14, 1993, Mr. Smith scheduled a June 14, 1993, conference with Mr. Hunter, but Mr. Hunter failed to appear. Petitioners retained a different representative, Ernest D. Kelly (Mr. Kelly), sometime thereafter. Because Mr. Kelly's office was in New Orleans, Louisiana, on June 25, 1993, petitioners requested that their case be transferred to the New Orleans Appeals Office. Respondent determined that the case did

not meet the criteria for transfer of jurisdiction so the transfer request was denied.

Mr. Smith met with petitioner and Mr. Kelly on August 20, 1993. At that meeting, Mr. Smith requested that petitioners provide certain documents. Some of the requested documents were received by Mr. Smith on September 8, 1993. Due to his inventory of cases, Mr. Smith decided to put petitioners' case aside until he received the additional information requested from petitioners. Mr. Smith did not work on petitioners' case from December 1, 1993, through January 10, 1994, when he either was on leave or attending a staff meeting.

On February 26, 1994, petitioners once again requested that their case be transferred to New Orleans, and that request was denied. On April 26, 1994, Appeals responded to a congressional inquiry regarding petitioners' request to transfer jurisdiction to the New Orleans Appeals Office. In the letter, Appeals stated that while the agency manual sets forth "limited exceptions to permit the transfer of jurisdiction to another appeals office", petitioners did not "meet the exceptions to transfer jurisdiction to the New Orleans Appeals Office." Appeals further noted in the letter that petitioners had been advised of this fact on several occasions.

Mr. Smith never received the additional information requested from petitioners. On September 13, 1994, he advised

petitioners by letter that there was no basis for changing the proposed adjustments made in the revised RAR. He advised petitioners of their options to extend the period of limitations or litigate the matter in United States Tax Court or District Court. The case was forwarded to the Birmingham Appeals Office with Mr. Smith's recommendations regarding the proposed adjustments. On November 30, 1994, respondent issued a notice of deficiency for the 1989 and 1990 tax years based upon the proposed adjustments made in the revised RAR. In addition, in the notice of deficiency, respondent determined that for each year petitioners were liable for an accuracy-related penalty under section 6662(a).

On February 27, 1995, a petition for the redetermination of the deficiencies determined in the above-mentioned notice of deficiency was timely filed, pro sese (the deficiency proceeding). Petitioners designated New Orleans as the place of trial in the deficiency proceeding. Initially, the deficiency proceeding was assigned to one of respondent's attorneys in Birmingham, Alabama. On May 8, 1995, after the petition had been answered, the deficiency proceeding was transferred to senior attorney Emile L. Hebert III (Mr. Hebert), one of respondent's attorneys located in New Orleans.

Mr. Hebert sent petitioners what is commonly referred to as a "Branerton letter"[2] on November 21, 1995, and received a reply from petitioners' representative on December 5, 1995. In early January 1996, following a formal Request for Production of Documents, dated December 27, 1995, petitioners produced to Mr. Hebert a number of documents, including checks, contracts, invoices and spreadsheets used in the preparation of petitioners' 1989 and 1990 returns. In the cover letter accompanying the documents, petitioners' representative also represented that information related to the car and truck expenses would be produced the following week.

By notice dated October 5, 1995, the deficiency proceeding was set for trial at the Trial Session of the Court scheduled to commence in New Orleans on March 11, 1996. Prior to trial, the parties agreed to a basis of settlement. By a stipulated decision entered in the deficiency proceeding on April 23, 1996, deficiencies of $5,092.68 and $7,842.13, for 1989 and 1990, respectively, (the deficiencies) and no additions to tax under section 6662(a) were redetermined by the Court.

In early November 1997, petitioners submitted to respondent a Form 843, Claim for Refund and Request for Abatement, in which petitioners requested an abatement of all of the interest that

---

[2] See <u>Branerton Corp. v. Commissioner</u>, 61 T.C. 691 (1974).

had accrued on the deficiencies.  Petitioners' request was denied

by letter dated May 27, 1998, because, according to the letter:

> There was no ministerial act delaying completion of the
> case. * * * [Petitioners] did not agree at the
> examination level or at the appeals level.  Allowing
> the * * * [petitioners] to present "new facts" in their
> behalf and consider their request to have the case
> transferred contributed to the span of time in
> resolving their case.

Petitioners filed a protest and after reconsidering

petitioners' abatement of interest claim, on September 16, 1998,

respondent issued a Notice of Final Determination upholding the

denial of their interest abatement claim.  The petition in this

case was timely filed, pro sese, on February 22, 1999.

OPINION

Subject to exceptions not relevant here, interest on a

deficiency begins to accrue on the due date of the return and

continues to accrue, compounding daily, until payment is made.

See secs. 6601(a), 6622(a).

The Commissioner has the authority to abate the assessment

of interest on a deficiency if the accrual of such interest is

attributable to an error or delay by an official or employee of

the Internal Revenue Service in performing a ministerial act.[3]

_____

[3] In 1996, section 6404(e) was amended under sec. 301 of the
Taxpayer Bill of Rights 2, Pub.L. 104-168, 110 Stat. 1452, 1457
(1996), to permit the Secretary to abate interest with respect to
an "unreasonable" error or delay resulting from "managerial" and
ministerial acts.  This amendment, however, applies to interest
accruing with respect to deficiencies or payments for tax years
(continued...)

See sec. 6404(e)(1).  A ministerial act means a procedural or mechanical act that does not involve the exercise of judgment or discretion.  See Lee v. Commissioner, 113 T.C. 145 (1999); sec. 301.6404-2T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).  Subject to various procedural and other requirements set forth in the statute and not here in dispute, the Court has jurisdiction over any action brought by a taxpayer to determine whether the Commissioner's failure to abate interest was an abuse of discretion.  See sec. 6404(i); Lee v. Commissioner, supra.

In their petition, petitioners contend that they are entitled to an abatement of interest because of "Excessive delays by the Internal Revenue Service on assessment of [their] tax liability."  Petitioners do not identify any specific acts on respondent's part that would constitute "ministerial acts" entitling them to abatement of interest, nor is it clear from the petition or petitioners' presentation at trial over what specific period of time the "excessive delays" occurred.

In their brief, petitioners appear to focus on the examination and appeals phases of the deficiency proceeding, which covers the 3-year span between December 6, 1991 and

---

³(...continued)
beginning after July 30, 1996; therefore, the amendment is inapplicable here.  See Woodral v. Commissioner, 112 T.C. 19, 25 n.8 (1999).

November 30, 1994.  Petitioners contend that there were "grossly unfair" delays by respondent during this time; however, the brief does not identify any actions on respondent's part that would constitute "ministerial acts" during this time.  It appears to us that petitioners consider themselves entitled to the relief sought based merely upon the time that transpired from the date the examination began until the date the stipulated decision document was entered by this Court.  The mere passage of time, however, in and of itself does not suggest an unreasonable delay or error caused by a ministerial act on respondent's part.  See Cosgriff v. Commissioner, T.C. Memo. 2000-241 (citing Lee v. Commissioner, supra at 150).

Nevertheless, we have examined the 5-year span starting from respondent's first contact with petitioners regarding the examination of their 1989 and 1990 returns on June 6, 1991,[4] until the deficiency proceeding was concluded by the entry of a stipulated decision document on April 23, 1996.  In doing so, we find no evidence of any specific ministerial act on respondent's part that caused an unreasonable delay in the progress of the examination through the deficiency proceeding.  The length of

[4] Under section 6404(e), a taxpayer is entitled to abatement of assessed interest on a deficiency only for any period starting "after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency".  Sec. 6404(e)(1). Accordingly, interest accrued on petitioners' deficiency prior to June 6, 1991, is not abatable.  See sec. 6404(e).

time taken by the officers and employees of the Internal Revenue Service to conduct the examination, appeals and settlement process was not due to an error or delay in performing a ministerial act.  That being so, it follows that respondent did not abuse his discretion in denying petitioners' claim for abatement of interest on Federal income tax deficiencies for 1989 and 1990.

To reflect the foregoing,

Decision will be

entered for respondent.