T.C. Memo. 2002-256


UNITED STATES TAX COURT


RAYMOND M. AND JOY D. JEAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4122-00.                    Filed October 8, 2002.


Raymond M. and Joy D. Jean, pro sese.

<u>Paul K. Webb</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>: On February 9, 2000, respondent issued a notice
of final determination denying petitioners' claim to abate
interest for the periods January 31, 1995, to April 4, 1996, and
October 7, 1997, to October 28, 1998, with respect to their 1993
Federal income tax liability.  Petitioners timely filed a

petition to this Court under section 6404(i)[1] and Rule 280.
After concessions,[2] the sole issue to be decided is whether
respondent abused his discretion by denying petitioners' request
to abate interest for the aforementioned periods.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.
The stipulation of facts and the accompanying exhibits are
incorporated herein by this reference. Petitioners resided in
Hollister, California, at the time the petition was filed.

On December 8, 1994, respondent notified petitioners that
their Federal income tax return for taxable year 1993 had been
selected for audit. On January 31, 1995, petitioners met with
Tax Auditor Elaine Erickson (Ms. Erickson)[3] in order to commence
the audit of their 1993 tax return. Sometime during March 1995,
Ms. Erickson attended Phase II business audit training. Sometime
between March and October 1995, Ms. Erickson attended Financial
Status training. Sometime during October 1995, through February

---

[1]Sec. 6404(i) was redesignated sec. 6404(h) by the Victims
of Terrorism Tax Relief Act of 2001, Pub. L. 107-134, sec.
112(d)(1)(B), 115 Stat. 2427, 2434-2435. Unless otherwise
indicated, all section references are to the Internal Revenue
Code in effect at the time the petition was filed, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

[2]At trial, the parties stipulated a partial settlement.
Respondent agreed to abate the interest for one-half of the
period that spans Jan. 21 through Aug. 6, 1998.

[3]Ms. Erickson is also known by the names Elaine Hess and
Elaine Sisk.

19, 1996, Ms. Erickson attended Phase III Audit training. Ms. Erickson's group manager, Pat Lewis, instructed Erickson to retain petitioners' audit case until completing the aforesaid training.

Petitioners' case was assigned to Ms. Erickson during the entire period of her training. Ms. Erickson had neither the authority to determine whether and when to go to training classes nor the authority to transfer petitioners' case to a different agent. On April 2, 1996, Ms. Erickson mailed to petitioners a copy of their Individual Income Tax Examination Changes (audit report).

In June 1996, the audit of petitioners' 1993 return was transferred to Revenue Agent Carol A. Ruiz (Agent Ruiz). Petitioners' case was transferred because Ms. Erickson moved. On July 1, 1996, Agent Ruiz issued Form 4564, Information Document Request (IDR), which asked for petitioners' workpapers supporting, inter alia, their claim to a net operating loss carryover on their 1993 return (the NOL). On July 9, 1996, Agent Ruiz, by letter, explained to petitioners the need for documentation supporting their claim to the NOL. On July 18, 1996, Agent Ruiz issued a second IDR which requested supporting documents. Petitioners failed to provide Agent Ruiz with the requested documentation.

On August 14, 1996, Agent Ruiz issued a 30-day letter to petitioners in which she proposed changes to their 1993 return. On August 27, 1996, petitioners sent a letter to respondent agreeing and disagreeing, in part, with Agent Ruiz's proposed changes. Respondent interpreted petitioners' letter as a request that their case be transferred to the Appeals Office. On October 22, 1996, Appeals Officer Danny Raley (Appeals Officer Raley) sent petitioners a letter requesting a conference to negotiate a resolution of the matters with which petitioners disagreed. On numerous occasions, Appeals Officer Raley requested documentation supporting petitioners' claimed NOL.[4] Over the course of the next year, respondent and petitioners resolved several issues from the audit of petitioners' 1993 return.

On October 7, 1997, Appeals Officer Raley informed petitioners that he was returning their case to the examination branch of the Internal Revenue Service to review petitioners' documentation regarding the NOL. On October 23, 1997, Agent Ruiz contacted petitioners to schedule a conference to discuss the NOL. Petitioners informed Agent Ruiz that they did not wish to meet with her and wanted their case assigned to a different agent.

---

[4]Appeals Officer Raley sent letters to petitioners on Nov. 12, 1996, June 2, 1997, July 9, 1997, and Sept. 5, 1997, describing the specific documents petitioners needed to produce to substantiate their claim to the NOL.

On November 6, 1997, petitioners' case was assigned to Revenue Agent Ed Clarke (Agent Clarke). On December 10, 1997, Agent Clarke mailed a letter to petitioners requesting a conference. On January 21, 1998, Agent Clarke met with petitioners and received and copied several documents. On August 6, 1998, Agent Clarke left a telephone message for petitioners asking that they return his phone call to schedule an appointment with him. On September 1, 1998, Agent Clarke spoke with petitioners and scheduled a meeting for September 3, 1998. Due to Agent Clarke's hospitalization, his group manager telephoned petitioners and canceled Agent Clarke's September 3, 1998, conference with petitioners. Agent Clarke died on October 5, 1998.

On September 17, 1998, petitioners' case was reassigned to Revenue Agent Vickie McIntosh (Agent McIntosh). On September 29, 1998, Agent McIntosh received petitioners' audit files. On October 8, 1998, Agent McIntosh reviewed petitioners' case. On October 15, 1998, Agent McIntosh scheduled a conference with petitioners for October 20, 1998. Petitioners subsequently canceled the conference, which was rescheduled for October 22, 1998. On October 22, 1998, Agent McIntosh met with petitioner Raymond Jean to discuss the NOL. On October 26, 1998, Agent McIntosh met with her group manager, Elizabeth Laverty (Manager Laverty), and spoke on the telephone with Appeals Officer Raley

to discuss petitioners' case.  On October 27, 1998, Agent McIntosh again met with Manager Laverty to discuss petitioners' case.  On October 28, 1998, Manager Laverty had a telephone conference with petitioner Raymond Jean.  On October 29, 1998, petitioner Raymond Jean had a telephone conference with Examination Branch Chief Keith Zepeda concerning petitioners' audit.  On October 30, 1998, Manager Laverty sent identical letters addressed to each petitioner requesting a final conference with herself and Agent McIntosh and for petitioners to bring with them "100%" of the documentation supporting their claim to the NOL.  The conference was scheduled for, and attended by the parties on, December 1, 1998.  Petitioners failed to provide the documentation requested.

Eventually, respondent and petitioners resolved the issues that arose during the examination.  On December 24, 1999, petitioners filed with respondent Form 843, Claim for Refund and Request for Abatement.  On February 9, 2000, respondent issued a final determination letter disallowing petitioners' claim for abatement of interest for the aforesaid periods.

OPINION

Pursuant to section 6404(e)(1), the Secretary may abate all or any part of an assessment of interest on any deficiency or payment of tax if either:  (A) The deficiency is attributable, in whole or in part, "to any error or delay by an officer or

employee of the Internal Revenue Service * * * in performing a ministerial act," or (B) an error or delay in payment of tax is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act. "[A]n error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved". Sec. 6404(e)(1).[5]

This Court has jurisdiction to order an abatement of interest only when a taxpayer can show that the Commissioner has abused his discretion in refusing a taxpayer's request to abate interest. Sec. 6404(i). To show an abuse of discretion, a taxpayer must establish that respondent exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. Rule 142(a); Woodral v. Commissioner, 112 T.C. 19, 23 (1999) (citing Mailman v. Commissioner, 91 T.C. 1079, 1082 (1988)). Because Congress did not intend for section 6404(e) to be routinely used to avoid the payment of interest, we order abatement only "'where failure to abate interest would be widely perceived as grossly unfair.'" Lee v. Commissioner, 113 T.C.

---

[5]In 1996, sec. 6404(e)(1) was amended by the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301, 110 Stat. 1457 (1996), to allow the Commissioner to abate interest for an "unreasonable" error or delay resulting from "managerial" and ministerial acts. The amendment applies to interest accruing on deficiencies for the tax years beginning after July 30, 1996, and is, accordingly, not applicable to this case. Woodral v. Commissioner, 112 T.C. 19, 25 n.8 (1999).

145, 149 (1999) (quoting H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208).

Under the version of section 6404(e) in effect during the periods relevant hereto, the Commissioner has the power to abate interest only for error or delay with respect to a ministerial act. The term "ministerial act" means "a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place." Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed.Reg. 30163 (Aug. 13, 1987); see Lee v. Commissioner, supra.[6]

Petitioners argue respondent abused his discretion in failing to abate interest for two separate periods: January 31, 1995, through April 4, 1996, and October 7, 1997, through October

---

[6]The final regulation under sec. 6404(e) was issued on Dec. 18, 1998. The final regulation generally applies to interest accruing on deficiencies or payments of tax described in sec. 6212(a) for tax years beginning after July 30, 1996. Sec. 301.6404-2(d)(1), Proced. & Admin. Regs. Accordingly, the final regulation is inapplicable to the instant case, and sec. 301.6404-2T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987), effective for taxable years beginning after Dec. 31, 1978, but before July 30, 1996, applies. Sec. 301.6404-2T(c), Temporary Proced. & Admin. Regs., supra.

28, 1998.[7]  Because petitioners' arguments are founded on
different bases, we shall respond to each separately.

With respect to the first period, January 31, 1995, through
April 4, 1996, petitioners argue that respondent delayed the
resolution of their case for approximately 15 months while the
revenue agent assigned to their case attended training.
Petitioners argue that they should not be penalized with interest
for a period during which respondent acknowledges his employee
was not permitted or authorized to work on their case.
Petitioners' argument fails because respondent did not have the
discretion to abate interest for the subject period.

The version of section 6404(e)[8] in effect for the period at
issue provides the Commissioner with discretion to abate all or
any part of an assessment of interest only if such interest is a
result of an error or delay by an officer or employee in the
performance of a ministerial act.  Sec. 6404(e).  The
Commissioner does not have the requisite discretion to abate
interest with respect to an error or delay resulting from
managerial acts.  At trial, Tax Auditor Erickson testified that

_____

[7]At trial, the parties stipulated the partial settlement of
this second period.  Specifically, the parties settled their
dispute regarding the period spanning Jan. 21 through Aug. 6,
1998.  Accordingly, this opinion relates solely to the periods
articulated in the petition to which the parties have not
stipulated a partial settlement.

[8]See supra note 5.

her manager had the sole authority to decide whether she was to receive training and whether petitioners' case was to be reassigned to another revenue agent. Those decisions constituted managerial and not ministerial acts. Example 4 of the temporary regulations assists in the resolution of this issue:

> A revenue agent is sent to a training course, and the agent's supervisor decides not to reassign the agent's cases. During the training course, no work is done on the cases assigned to the agent. Neither the decision to send the agent to the training course nor the decision not to reassign the agent's cases is, under the circumstances, a ministerial act. Thus, interest attributable to the delay cannot be abated. [Sec. 301.6604-2T(b), Example (4), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).]

See Jacobs v. Commissioner, T.C. Memo. 2000-123; Gorgie v. Commissioner, T.C. Memo. 2000-80. Because there is no "ministerial" act performed by respondent's employees or officers that caused any delay in the resolution of petitioners' case, respondent could not abate interest for this period. Accordingly, we uphold respondent's final determination not to abate interest for this first period.

With respect to the second period at issue, which because of the parties' settlement now only involves October 7, 1997, through January 20, 1998, and August 7 through October 28, 1998, petitioners' argument centers on the allegedly unreasonable delay resulting from the assignment of their case to a new revenue agent who, during the processing of petitioners' case, died.

Petitioners fail to identify any ministerial act performed by respondent which delayed the resolution of their case. As discussed above, respondent has discretion to abate interest for an error or delay resulting only from a ministerial act performed by his employees. By definition, a ministerial act is one that is procedural or mechanical; it does not involve the exercise of judgment or discretion. Lee v. Commissioner, 113 T.C. 145 (1999). Respondent's decision of how and when to work on a case, based on an evaluation of his entire caseload and his workload priorities, is not a ministerial act. Strang v. Commissioner, T.C. Memo. 2001-104; Leffert v. Commissioner, T.C. Memo. 2001-23. Petitioners have failed to demonstrate that any delay was due to a ministerial act.

In fact, the record demonstrates that respondent performed substantial work on petitioners' case during this second period. After petitioners' case was processed by respondent's appellate division, it was returned to the audit branch. Petitioners requested a transfer of their case to a different Revenue agent. Respondent capitulated and on November 6, 1997, he transferred the case to Agent Clarke. On December 10, 1997, Agent Clarke sent petitioners a letter detailing the return of the case from the Appeals Division and its assignment to him.[9] On January 21,

---

[9]The letter requested petitioners to contact Agent Clarke to schedule a conference regarding their case, identifying the NOL

1998, Agent Clarke met with petitioners and retained photocopies of documents submitted by petitioners. The only apparent period of inactivity with regard to petitioners' case is from January 21 until August 6, 1998. However, the parties have stipulated the settlement of their dispute for this period. On August 6, 1998, Agent Clarke left a telephone message for petitioners to return his call in order to schedule a conference. On September 1, 1998, Agent Clarke spoke with petitioners and scheduled a conference for September 3, 1998. Due to Agent Clarke's hospitalization, on September 3, 1998, Manager Laverty canceled Agent Clarke's scheduled conference with petitioners. On September 17, 1998, petitioners' case was reassigned to Agent McIntosh. On September 29, 1998, Agent McIntosh received petitioners' audit files. On October 8, 1998, Agent McIntosh reviewed petitioners' case. On October 15, 1998, Agent McIntosh and petitioners scheduled a conference for October 20, 1998. Petitioners canceled and subsequently rescheduled that conference for October 22, 1998. Petitioner Raymond Jean met with Agent McIntosh on October 22, 1998. On October 26, 1998, Agent McIntosh met with Manager Laverty and spoke on the telephone with Appeals Officer Raley about petitioners' case. On October 27, 1998, Agent McIntosh again met with Manager Laverty to discuss

---

as the sole remaining issue and the need for documentation supporting petitioners' claims thereto.

petitioners' case.  On October 28, 1998, Manager Laverty conferred telephonically with petitioners concerning their audit.

The Commissioner's discretionary power to abate interest is conditioned upon a finding that the error or delay is not "significantly" attributable to the taxpayer.  Sec. 6404(e)(1). Respondent requested documentation supporting petitioners' claim to the NOL, and petitioners failed to provide such documentation. Any delay with respect to the resolution of petitioners' case during this second period was "significantly" attributable to petitioners.

Petitioners have not demonstrated that respondent abused his discretion in refusing to abate interest during either of the periods at issue.

Decision will be entered

under Rule 155.