T.C. Memo. 2003-297

UNITED STATES TAX COURT

NICHOLAS J. AND DIANE L. PALIHNICH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10591-00.                Filed October 23, 2003.

        Petitioners (Ps) claimed deductions relating to
White Rim, a limited partnership in which they owned an
interest in 1980-83.  Respondent (R) determined that Ps
were not entitled to deduct losses from White Rim.

        In 1987, Ps filed amended returns for 1981-82.
Without Ps' knowledge, R lost those returns for almost
11 years.  In March 1998, R found and processed those
amended returns.  If R had timely processed those
returns, overpayments from 1985-87 and a refund from
1982 would have been available to pay Ps' 1980 tax
liability.  Ps believed in 1987 that, as a result of
tax payments they had made and carrybacks to which they
were entitled, they had paid all or substantially all
of the amounts R said Ps owed for 1980-83.

        R abated interest for 1981-82 that accrued while
the returns were lost, but did not abate interest for
1980.  Ps filed a claim for R to abate interest on
their income tax liability for 1980 and additional

interest for 1981 resulting from R's denial of Ps'
White Rim deductions.

     <u>Held</u>:  R's loss of Ps' 1981-82 amended returns
from May 1987 to March 1998 was a ministerial error for
purposes of sec. 6404(e), I.R.C.

     <u>Held</u>, <u>further</u>, R's refusal to abate interest that
accrued from May 1987 to March 1998 on Ps' tax
liability for 1980 was an abuse of discretion.

     <u>Held</u>, <u>further</u>, R's refusal to abate interest that
accrued other than from May 1987 to March 1998 was not
an abuse of discretion.


<u>Kenneth R. Cohen</u>, for petitioners.

<u>Shawna A. Early</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COLVIN, <u>Judge</u>:  Respondent issued a final determination
disallowing petitioners' claim under section 6404(e) for
abatement of interest related to petitioners' 1980 and 1981 tax
years.  Petitioners timely filed a petition under section
6404(g)[1] and Rule 280.

The issue for decision is whether respondent's denial of
petitioners' request to abate interest relating to petitioners'

---

[1]  This was redesignated sec. 6404(i) by the Internal
Revenue Service Restructuring and Reform Act of 1998, Pub. L.
105-206, secs. 3305(a), 3309(a), 112 Stat. 743, 745.  Sec.
6404(i) was later redesignated sec. 6404(h) by the Victims of
Terrorism Relief Act of 2001, Pub. L. 107-134, sec. 112(d)(1)(B),
115 Stat. 2435 (2002).

1980 and 1981 tax years was an abuse of discretion. Resolution of this issue depends on resolution of the following issues:

1. Whether respondent's loss of petitioners' 1981-82 amended returns for almost 11 years was a ministerial act. We hold that it was.

2. Whether respondent's refusal to abate interest that accrued from May 1987 to March 1998 on petitioners' tax liability for 1980 was an abuse of discretion. We hold that it was.

3. Whether respondent's refusal to abate interest that accrued other than during the time respondent lost petitioners' 1981-82 amended returns was an abuse of discretion. We hold that it was not.

Section references are to the Internal Revenue Code as amended. Rule references are to the Tax Court Rules of Practice and Procedure. References to petitioner are to Nicholas J. Palihnich.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. <u>Petitioners and Their 1980-82 Tax Liabilities</u>

Petitioners are married and lived in Hopkinton, Massachusetts, when they filed the petition in this case.

1. <u>Petitioners' White Rim Investment and Respondent's Disallowance of Petitioners' White Rim Deductions</u>

Petitioners were limited partners in the White Rim Oil & Gas Partnership (White Rim) in 1980-83. Petitioners deducted losses

from White Rim on their 1980-83 Federal income tax returns.  On dates not stated in the record, respondent audited the returns of White Rim and its limited partners and examined petitioners' income tax returns for 1980-83.

On June 11, 1984, respondent sent a notice of deficiency to petitioners in which respondent determined a $39,599 deficiency for 1980 resulting from respondent's disallowance of a $79,198 loss related to White Rim.  Petitioners timely filed a petition in this Court.

In 1986, petitioners received a notice of deficiency for 1981.  In it, respondent determined a deficiency which resulted from the disallowance of petitioners' claimed losses for White Rim.  Except for petitioners' White Rim deductions, respondent has never questioned any item on any of petitioners' tax returns.

2.   Petitioners' Amended Returns for 1981-82

In 1986 and 1987, respondent issued notices of tax due and filed tax liens for petitioners' 1981-82 tax liabilities.  As a result, petitioners decided to fully pay their White Rim tax liabilities in 1987.  To accomplish this, they planned to file amended returns for 1981 and 1982, to refinance their home to fully pay their 1982 tax liability, and to apply overpayments totaling about $33,000 from 1985-87 to their 1980-83 liabilities. Petitioners believed that, as a result of these actions, they

would fully pay all tax liabilities asserted by respondent relating to their White Rim investment.

Early in 1987, petitioners told respondent's representatives that petitioners planned to file 1981-82 amended returns and that they thought that, as a result, they would owe no tax for those years. Samuel Coleman, a certified public accountant, prepared, and in May 1987 filed, petitioners' amended returns for 1981 and 1982 in which they carried back net operating losses (NOLs) from 1984 and 1985 to 1981 and 1982, resulting in zero tax due for 1981 and a $2,844 refund for 1982.

Respondent's Brookhaven Service Center lost petitioners' 1981-82 amended returns in 1987. Respondent did not process them until March 1998.

Sometime after they filed their amended returns, petitioners wrote to respondent seeking information about their 1981 amended return. An employee in respondent's office in Holtsville, New York, wrote in reply that respondent would respond more fully in 90 days. Shortly thereafter, respondent informed petitioners that respondent had transferred the matter to respondent's office in Newark, New Jersey. On June 11, 1987, petitioners wrote to respondent at respondent's Holtsville, New York, office seeking information about their 1982 amended return. Respondent replied to petitioners on September 23, 1987, stating that respondent would respond more fully in 90 days. Respondent did not contact

petitioners again about their 1981-82 amended returns until early 1998.

###   3.   Petitioners' Payment of Tax

In 1986-90 and 1992, respondent applied substantial overpayments and credits from 1980, 1982, and 1985-87 to petitioners' tax liability for 1981.  Respondent also applied the $14,193 in withholding credits that petitioners had reported on their 1981 return to their 1981 tax liability.

In October 1987, petitioners paid their nearly $76,000 tax liability for 1982.  They expected that, because they had claimed NOLs on their 1981-82 amended returns and made full payment for 1982, respondent would apply overpayments and withholding credits of about $33,000 from 1985-87 to 1980 rather than to 1981 or 1982.  Petitioners believed that, after the filing of their 1981-82 amended returns, the paying of the $76,000 liability for 1982, and the application of overpayments to 1980, they would have fully paid all tax liabilities asserted by respondent relating to their White Rim investment.

Respondent sent to petitioners notices of tax lien for 1981 on April 8, 1988, and June 19, 1991, a final notice of intent to levy for 1981 on June 22, 1992, and a certificate of release of Federal tax lien for 1981 on August 27, 1992.

Respondent did not contact petitioners further about their 1980-83 tax years until 1997.  From 1987 to 1997, petitioners

continued reasonably to believe that they had paid all taxes
respondent had asserted they owed relating to their 1980-83 tax
liabilities arising from White Rim. The parties settled
petitioners' 1980 Tax Court case on December 8, 1997. At that
time, petitioners still believed that they had fully paid the
1980 deficiency and interest thereon.

4. <u>Respondent's Discovery of Petitioner's Amended Returns</u>

On February 23, 1998, petitioners wrote to respondent
seeking information about their 1981-82 amended returns. As a
result of petitioners' letter, respondent realized that
respondent had lost petitioners' 1981-82 amended returns.
Respondent found and processed petitioners' 1981-82 amended
returns in March 1998.

On April 27, 1998, we entered a decision in petitioners'
1980 case that petitioners had a deficiency in income tax of
$39,599 for 1980. On August 21, 1998, respondent issued to
petitioners a notice of tax due for 1980 showing an assessment of
additional tax of $39,599, interest of $93,172.57, an adjustment
or credit of $74,537.94, and a balance due of $58,233.63.

B. <u>Petitioners' Claim for Abatement of Interest</u>

Respondent abated interest from May 1987 to March 1998 with
respect to petitioners' 1981 and 1982 tax years. In April 1999,
petitioners filed a claim under section 6404(e) in which they
asked respondent to abate $16,512.15 of interest for 1980 and

$210.98 for 1981 because respondent had lost their 1981-82 amended returns for almost 11 years. On April 13, 2000, respondent issued a final determination denying petitioners' interest abatement claim.

OPINION

A. Background

The Commissioner may abate interest assessed on any deficiency or payment of tax to the extent that any error or delay in payment of the tax is attributable to erroneous or dilatory performance of a ministerial act by an officer or employee of the Commissioner, and the taxpayer caused no significant aspect of the delay. Sec. 6404(e)(1).[2] We apply an

_____

[2] Sec. 6404(e)(1), as enacted in 1986 and as applicable here, provides:

> SEC. 6404(e). Assessments of Interest Attributable to Errors and Delays by Internal Revenue Service.--
>
> > (1) In general.--In the case of any assessment of interest on--
> >
> > > (A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or
> > >
> > > (B) any payment of any tax described in section 6212(a) to the extent that any delay in such

(continued...)

- 9 -

abuse of discretion standard in reviewing the Commissioner's determination not to abate interest. Lee v. Commissioner, 113 T.C. 145, 149 (1999); Krugman v. Commissioner, 112 T.C. 230, 239 (1999).

B.   Respondent's Contentions

Respondent contends that:  (1) Respondent's loss of petitioners' 1981-82 amended returns for almost 11 years was not a ministerial act; (2) petitioners' delay in paying their 1980 tax was not attributable to respondent's loss of their amended 1981-82 returns; (3) petitioners' delay in paying their 1980 tax was attributable to petitioners' decision to wait for the processing of their 1981-82 amended returns; and (4) respondent's

---

[2](...continued)
> payment is attributable to such
> officer or employee being dilatory
> in performing a ministerial act,

> the Secretary may abate the assessment of all
> or any part of such interest for any period.
> For purposes of the preceding sentence, an
> error or delay shall be taken into account
> only if no significant aspect of such error
> or delay can be attributed to the taxpayer
> involved, and after the Internal Revenue
> Service has contacted the taxpayer in writing
> with respect to such deficiency or payment.

Congress amended sec. 6404(e) in 1996 to permit abatement of interest for "unreasonable" error or delay in performing a "managerial" or ministerial act. Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301, 110 Stat. 1457 (1996). This amendment applies to interest accruing with respect to deficiencies or payments for tax years beginning after July 30, 1996, and thus does not apply in the instant case. See Woodral v. Commissioner, 112 T.C. 19, 25 n.8 (1999).

refusal to abate $210.98 in interest for 1981 was not an abuse of discretion because that interest did not accrue during the time respondent lost petitioners' 1981-82 amended returns.

C.  Whether Respondent's Loss of Petitioners' 1981-82 Amended Returns Was a Ministerial Act

Respondent contends that respondent's loss of petitioners' 1981-82 amended returns was not a ministerial act.  We disagree.

Respondent's loss of petitioners' 1981-82 amended returns fits easily within the definition of a ministerial act contained in Treasury regulations.  Those regulations state that a ministerial act is a procedural or mechanical act that occurs during the processing of a taxpayer's case that does not involve the exercise of judgment or discretion by the Commissioner.  Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).  The Commissioner's loss of a taxpayer's return is a procedural or mechanical act that does not involve the exercise of discretion or judgment by the Commissioner.  The Commissioner's loss of a taxpayer's returns is similar to an unexplained delay in transferring a file or issuing a notice of deficiency.  See, e.g., sec. 301.6404-2T(b), Examples (1) and (2), Temporary Proced. & Admin. Regs., supra.

In contrast, the loss of a taxpayer's return is unlike a decision about prioritizing cases or decisions (based on workload and limited resources) whether or when to begin an audit or whether to send a revenue agent to training without reassigning

that agent's cases, all of which are purposeful activities by the Commissioner. See, e.g., sec. 301.6404-2T(b)(2), Examples (3), (4), and (5), Temporary Proced. & Admin. Regs., supra. Respondent has identified no purpose served by losing a taxpayer's returns, and we know of none.

In 1996, Congress amended section 6404(e) to provide for abatement of interest that accrues as a result of an unreasonable error or delay in performing a ministerial or managerial act. Sec. 6404(e)(1)(A) and (B); Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a), 110 Stat. 1457 (1996). Respondent points out that a regulation promulgated after enactment of that 1996 amendment, section 301.6404-2(b)(1), Proced. & Admin. Regs., provides: "Managerial act means an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records". Respondent also points out that section 301.6404-2(c), Example (6), Proced. & Admin. Regs. (Example (6)), provides as follows:

> Example 6. A revenue agent has completed an examination of the income tax return of a taxpayer. There are issues that are not agreed upon between the taxpayer and the IRS. Before the notice of deficiency is prepared and reviewed, a clerical employee misplaces the taxpayer's case file. The act of misplacing the case file is a managerial act. The Commissioner may (in the Commissioner's discretion) abate interest attributable to any unreasonable delay resulting from the file being misplaced.

Respondent contends that Example (6) supports a holding here that the loss of a taxpayer's records is a managerial act. We

disagree. First, we believe that the loss of a taxpayer's return is a ministerial act under the applicable version of section 6404(e)(1). See supra note 2. The loss of a taxpayer's records or returns does not require the exercise of judgment or discretion. Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., supra. Second, as respondent acknowledges, Example (6) applies only to interest accruing with respect to deficiencies for tax years beginning after July 30, 1996. We conclude that respondent's loss of petitioners' 1981-82 amended returns was a ministerial act for purposes of section 6404(e).

D.  Whether Petitioners' Delay in Paying Their Tax for 1980 Is Attributable to Respondent's Loss of Petitioners' 1981-82 Amended Returns

Respondent contends that petitioners' delay in paying their 1980 tax from May 1987 to March 1998 is not attributable to respondent's loss of petitioners' 1981-82 amended returns. We disagree.

The term "attributable to" means due to, caused by, or generated by. Lawinger v. Commissioner, 103 T.C. 428, 435 (1994). The record shows that petitioners' delay in paying the 1980 tax is attributable to respondent's loss of their 1981-82 amended returns. The NOLs claimed on petitioners' 1981-82 amended returns plus their $76,000 payment for 1982 eliminated their liabilities for 1981 and 1982. If those returns had been timely processed in 1987, $33,000 in overpayments from 1985-87

and a $2,844 refund for 1982 (and any interest that accrued on the overpayments and refund) would have been available to pay petitioners' 1980 tax liability.

Petitioners decided to fully pay their White Rim tax liabilities in 1987. In 1987, petitioners reasonably believed that, after they filed their amended returns and respondent applied overpayments to their 1980 year, they had paid amounts substantially equal to the total tax liabilities arising from their investment in White Rim for 1980-83, including the $39,599 deficiency respondent had determined for 1980. Petitioners' belief on this point was reasonable as shown by the fact that, in August 1998, after respondent processed the amended returns, respondent applied a $74,537 credit to petitioners' 1980 tax year. The pendency until 1998 of petitioners' 1980 Tax Court case has no bearing on the interest abatement issue here because petitioners reasonably believed that they had already paid the tax they owed for 1980.

We conclude that respondent's loss of petitioners' 1981-82 amended returns from 1987 to 1998 caused them to delay paying their 1980 tax until 1998.

The situation in this case is analogous to that in Douponce v. Commissioner, T.C. Memo. 1999-398, where the Court held that the Commissioner's failure to provide a taxpayer with a correct payoff amount was a ministerial error that warranted the

abatement of interest. A ministerial error by respondent caused both the taxpayer in Douponce and petitioners to delay paying their tax.

Respondent contends that Douponce is distinguishable from this case because there is no evidence that petitioners were misled by incorrect information from respondent concerning the correct amount of tax due for 1980. We disagree. As in Douponce, "the only reason for the delay" in petitioners' payment of tax was respondent's ministerial error; i.e., the loss of petitioners' amended returns for 11 years.

Respondent contends that this situation is analogous to that in Wish v. Commissioner, T.C. Memo. 2001-57. We disagree. In Wish, the taxpayers knew they owed tax for 1981 but resisted collection efforts, anticipating that they would use a refund for 1985 to pay their 1981 tax. We held in Wish that the Commissioner's refusal to abate interest that accrued for 1981 while the taxpayers were awaiting their refund for 1985 was not an abuse of discretion because the delay in processing the refund did not cause the taxpayers to delay paying their 1981 tax. We said that the taxpayer in Wish "chose to await the determination of the refund claim for 1985, while all along requesting holds on collection." Here, unlike the taxpayers in Wish, petitioners reasonably believed they had taken steps sufficient to pay their

1980 tax; and here, unlike the delay in <u>Wish</u>, it was respondent's ministerial error that caused the delay.

We conclude that petitioners' delay in paying their 1980 tax from May 1987 to March 1998 was attributable to respondent's loss of their amended 1981-82 returns.

E.  <u>Whether Petitioners Significantly Contributed to the Delay</u>

Respondent contends that petitioners significantly contributed to the delay.  We disagree.

Petitioners had no role in losing their 1981-82 amended returns for 11 years and deserve credit for bringing to respondent's attention the fact that respondent had lost those returns.  Petitioners reasonably believed that they had paid their 1980 tax and did not significantly contribute to the delay. Petitioner credibly testified that petitioners would have paid the 1980 tax liability earlier had they known that they still owed tax for that year.  As discussed above, the only reason for the delay in petitioners' payment of their tax for 1980 was respondent's loss of petitioners' amended returns for 11 years. Thus, respondent's refusal to abate interest that accrued from May 1987 to March 1998 on petitioners' tax liability for 1980 was an abuse of discretion.

F.    Whether Respondent's Refusal To Abate Interest That Accrued
      Other Than From May 1987 to March 1998 Was an Abuse of
      Discretion

Petitioners contend that respondent's failure to abate an additional $210.98 for 1981 was an abuse of discretion. Petitioners have not stated the period during which the $210.98 in interest accrued.  Petitioners agree that respondent has abated interest for 1981 from May 1987 to March 1998.  The taxpayer must establish a correlation between the alleged error or delay by the Commissioner and a specific period for which interest should be abated as a result of that error or delay. Donovan v. Commissioner, T.C. Memo. 2000-220.  Thus, the $210.98 in interest for 1981 does not relate to respondent's loss of petitioners' 1981-82 amended returns.[3]

We conclude that respondent's failure to abate $210.98 in interest for 1981 was not an abuse of discretion.

To reflect the foregoing,

Decision will be

entered under Rule 155.

---

[3]  The $210.98 in interest for 1981 could have accrued before petitioners filed their amended returns and thus would not have been abated when respondent abated interest from May 1987 to March 1998.