T.C. Memo. 2002-266

UNITED STATES TAX COURT

DENNY'S AUTO SALES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11150-01.                    Filed October 18, 2002.

Ronald Lawson and Dennis F. Lawson (officers), for petitioner.

<u>John A. Freeman</u> and <u>Robert D. Kaiser</u>, for respondent.

MEMORANDUM OPINION

THORNTON, <u>Judge</u>:  Respondent issued a notice of final determination denying petitioner's request to abate interest for its 1995 tax year.  Petitioner timely filed a petition pursuant

to section 6404(i) and Rule 280.[1]  The sole issue for decision is whether respondent abused his discretion in denying petitioner's request for abatement of interest.

## Background

The parties have stipulated some of the facts, which we incorporate in our findings by this reference.  Petitioner is a Kentucky corporation.  When the petition was filed, petitioner's principal place of business was in South Shore, Kentucky.

On its 1995 Form 1120, U.S. Corporation Income Tax Return, petitioner claimed a $188,660 depreciation deduction with respect to certain used cars that were part of its car-rental program (the used cars).  In calculating this depreciation deduction, petitioner assigned the used cars zero salvage value.

On June 18, 1997, respondent's revenue agent first contacted petitioner concerning its 1995 Federal income tax return.  On July 14, 1998, the revenue agent issued her report, proposing that petitioner's claimed depreciation deduction should be reduced by $166,358, based on her conclusion that the salvage value of the used cars was 89 percent of original cost.

On February 16, 1999, respondent granted petitioner's request for an Appeals conference.  On or about January 10, 2000, petitioner and the Appeals officer reached a settlement, agreeing

---

[1] Unless otherwise stated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

that the used cars should be assigned a 20-percent salvage value.
The settlement resulted in a 1995 deficiency of $9,030 (after
application of a 1998 net operating loss carryback).  On May 22,
2000, respondent assessed $8,535.33 of interest on the 1995
deficiency.  On June 16, 2000, petitioner paid the 1995
deficiency, exclusive of interest.

On September 18, 2000, petitioner filed a Form 843, Claim
for Refund and Request for Abatement, requesting abatement of
$5,210.10 of the then-accrued interest.  By way of explanation,
petitioner stated on the Form 843:

> The taxpayer believes a reasonable period to resolve
> the issue should have been one year.  Therefore, the
> taxpayer [requests] an abatement of the interest in the
> amount of $5,210.10.  Leaving a balance due of
> $3,437.40.  This amount represents a reasonable amount
> of interest on the balance owed of $9,030.

On February 1, 2001, petitioner paid $3,473.40 of the interest.

On July 13, 2001, respondent issued a Notice of Final
Determination disallowing petitioner's request for abatement of
interest.

## Discussion

Under section 6404(e)(1), the Secretary may abate interest
on any deficiency or payment of income, gift, estate, and certain
excise taxes to the extent that the deficiency or any error or
delay in such payment is attributable to erroneous or dilatory
performance of a ministerial act by an officer or employee of the

Internal Revenue Service (IRS).[2]  Such an error or delay in performing a ministerial act is taken into account only if it is in no significant aspect attributable to the taxpayer and only if it occurs after the IRS has contacted the taxpayer in writing regarding the deficiency or payment.

Congress did not intend section 6404(e) to be "used routinely to avoid payment of interest"; rather, it is to be "utilized in instances where failure to abate interest would be widely perceived as grossly unfair."  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1985), 1986-3 C.B. (Vol. 3) 1, 208.

For interest abatement claims made after July 30, 1996, the Tax Court has jurisdiction to determine whether the Commissioner's failure to abate interest under section 6404(e) was an abuse of discretion.  See sec. 6404(i)(1);[3] Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

In the petition, petitioner contends that respondent took an "excessive amount of time in concluding the audit" and argues

---

[2] In 1996, sec. 6404(e) was amended to permit abatement of interest for "unreasonable" error or delay resulting from the performance of ministerial or "managerial" acts.  Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1457 (1996).  The amendment applies to tax years beginning after July 30, 1996.  Id. at sec. 301(c), 110 Stat. 1457.  Therefore, the amendment is inapplicable to the instant case.

[3] Sec. 6404(i) was redesignated sec. 6404(h) by the Victims of Terrorism Tax Relief Act of 2001, Pub. L. 107-134, sec. 112(d)(1)(B), 115 Stat. 2434-2435.

that "if the IRS had not taken such an unreasonable position in the beginning of the audit, then the delays on their part would have been drastically reduced".  The mere passage of time, however, does not establish that the Commissioner has erred or delayed in performing a ministerial act.  See Lee v. Commissioner, 113 T.C. 145, 150 (1999).  Similarly, the actions of respondent's agents in applying Federal tax law to petitioner's facts and circumstances required the exercise of judgment and discretion and so did not constitute ministerial actions that could provide a basis for abating interest.  See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).

At trial, petitioner's certified public accountant, Gary Fyffe (Fyffe), testified that on several occasions he requested, on petitioner's behalf, a meeting with the revenue agent's group manager to discuss the revenue agent's proposed adjustments. Fyffe testified that "basically I was told that * * * I wasn't going to get the meeting for different reasons, but * * * the reason I remember most was for some reason she wasn't available." Having failed to obtain a meeting with the group manager, petitioner requested and received an Appeals conference.  Fyffe opined that because the salvage value used by the revenue agent was "flawed", petitioner "would have probably been a little more

successful as far as getting a more reasonable adjustment" if the case had been reviewed by a group manager.

Petitioner contends that the group manager's failure to meet with Fyffe to discuss the revenue agent's proposed adjustments constituted error in performing a ministerial act.  In support of this contention, petitioner relies on Internal Revenue Manual section 4255.1(2)(b), which states:

> If the taxpayer disagrees with the proposed changes, either by letter or in person at the originating office, the group manager, <u>will on a priority basis, and at his/her discretion</u>, discuss the disputed adjustments with the taxpayer in a further attempt to resolve the issues and obtain the taxpayer's agreement. * * * [1 Audit, Internal Revenue Manual (CCH), sec. 4255.1(2)(b), at 7709; emphasis added.]

This provision of the Internal Revenue Manual plainly indicates that the group manager's discussion of disputed adjustments with the taxpayer is discretionary.  Accordingly, the nonoccurrence of such a discussion does not establish error in performing a ministerial act.

In any event, we cannot assume that a meeting with the group manager, if it had occurred, would have accelerated, rather than protracted, resolution of petitioner's tax controversy.  It is purely conjectural whether the group manager would have resolved the disputed issue any more expeditiously than the Appeals officer or any more to petitioner's satisfaction; we cannot assume that, even after meeting with the group manager, petitioner would not have requested an Appeals conference, or

that the final outcome of this more protracted administrative proceeding would have been any more in petitioner's favor. Accordingly, there is no basis to conclude that any of the interest on petitioner's 1995 deficiency was attributable to the group manager's failure to meet with petitioner.

In sum, the record does not show that there was any erroneous or dilatory performance of a ministerial act by respondent that caused or contributed to the delay in petitioner's payment of the 1995 tax liability. Consequently, respondent's denial of petitioner's request to abate interest under section 6404 was not an abuse of discretion.

<u>Decision will be entered</u>

<u>for respondent</u>.