T.C. Summary Opinion 2004-147


UNITED STATES TAX COURT


WILLIAM C. EBERHARDT, JR. AND SUSAN A. EBERHARDT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1918-03S.          Filed October 21, 2004.


William C. Eberhardt, Jr. and Susan A. Eberhardt, pro sese.

<u>Kevin W. Coy</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of sections 6330(d) and 7463 of the Internal Revenue Code in effect at the time that the petition was filed. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and

Procedure. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

The petition in this case was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. Pursuant to section 6330(d), petitioners seek review of respondent's determination to proceed with collection of their tax liability of $40,094.22 for 1995. At trial, petitioners also challenged the amount of interest that has accrued on their tax liability. The issues for decision are whether: (1) The Appeals officer abused her discretion in rejecting petitioners' Offer in Compromise (OIC) and sustaining a proposed levy to collect petitioners' unpaid income tax liability; and (2) the Appeals officer should have abated interest assessed with respect to petitioners' liability for the 1995 tax year.

The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. Petitioners resided in Riverside, California, at the time the petition was filed.

## Background

### A. Examination of Petitioners' Individual Income Tax Return for 1995

On April 15, 1996, petitioners filed a joint Form 1040, U.S. Individual Income Tax Return, for 1995. On September 23, 1997, respondent notified petitioners that their 1995 return had been

selected for examination.  On November 5, 1997, respondent mailed to petitioners a letter containing a report of proposed adjustments.  In that report, respondent determined that petitioners were liable for the 10-percent additional tax for making a premature withdrawal from their retirement plan.  On December 2, 1997, petitioners sent respondent a letter detailing petitioner William C. Eberhardt, Jr.'s (Mr. Eberhardt) disability and relying on that condition as authorization to withdraw retirement funds without penalty.

On December 9, 1997, respondent notified petitioners that additional issues had been identified for audit with regard to petitioners' 1995 tax year.  The letter contained a Form 4564, Information Document Request (IDR), which solicited documentation pertaining to petitioners' medical expenses, casualty or theft loss, and income and expense items on petitioners' Schedule C, Profit or Loss From Business, as well as additional information pertaining to Mr. Eberhardt's disability.

On January 22, 1998, petitioners sent respondent a letter containing additional documentation regarding the issue of Mr. Eberhardt's disability.  Also enclosed was a copy of a letter dated May 6, 1996, in which petitioners were notified that the examination of their 1993 return showed that no change was necessary in the tax reported in that return.  Petitioners did

not submit any documents pertaining to Mr. Eberhardt's medical expenses or any of the other documents requested in the IDR.

On March 10, 1998, respondent sent petitioners a second IDR regarding petitioners' medical expenses, casualty or theft loss, and Schedule C income and expenses. On May 2, 1998, petitioners submitted to respondent documentation pertaining to their claimed casualty or theft loss, which was related to petitioners' pension plan. They did not submit any medical expense or Schedule C documentation.

On May 24, 1998, petitioners sent respondent a copy of their 1993 Federal income tax return and a copy of a letter respondent sent to petitioners resolving an audit of their 1993 tax year. After reviewing petitioners' 1993 return, respondent's examiner narrowed the scope of the audit of petitioners' 1995 return to their medical expenses and the pension-related casualty or theft loss.

On May 27, 1998, respondent mailed to petitioners a report proposing adjustments to petitioners' medical expense deductions and the pension-related casualty or theft loss. Petitioners had invested in a self-directed IRA with First Pension Corporation (First Pension). In April 1994, First Pension filed for bankruptcy, and the accounts of their investment trustee, Summit Trust Company, were frozen. At the time of the bankruptcy filing, petitioners' account contained a 5-acre parcel of land

that petitioners allege decreased in value while their account was frozen.

On August 10, 1998, petitioners submitted to respondent additional documents they had prepared pertaining to the casualty or theft loss issue. Respondent reviewed the documentation and on October 26, 1998, notified petitioners that respondent's determination had not changed. Respondent also provided petitioners with copies of cases supporting respondent's decision to disallow petitioners' casualty or theft loss.

On November 25, 1998, respondent sent petitioners an updated report proposing adjustments to petitioners' medical expense and casualty or theft loss deductions as well as an additional case supporting respondent's decision regarding the casualty or theft loss issue. Respondent also sent petitioners a separate letter soliciting an extension of the period of limitations within which to audit petitioners' 1995 return. On December 14, 1998, petitioners signed a Form 872, Consent to Extend Time to Assess Tax, extending to June 30, 2000, the period within which respondent could assess the tax due for petitioners' 1995 tax year.

Respondent sent petitioners a revised audit report dated January 6, 1999, disallowing petitioners' medical expenses for lack of substantiation and also disallowing their casualty or theft loss. On January 11, 1999, respondent closed out the audit

of petitioners' 1995 return as unagreed and forwarded the case to the Appeals Office.

B.  Review of Petitioners' Return by the Appeals Office

Petitioners' case file was received in Appeals on or about January 27, 1999, and Appeals Officer Marilyn Radford (Ms. Radford) was assigned to handle the case.  Petitioners agreed to hold their initial meeting with Ms. Radford on March 19, 1999. On March 18, 1999, petitioners sent her information setting forth their position on the audit.  Ms. Radford asked for a postponement of the initial meeting so she could review the information.

Ms. Radford held telephone conferences with petitioners on March 24, 1999, and March 26, 1999.  Petitioners complained that the IRS handled their audit unprofessionally and caused unnecessary delays.  Petitioners also blamed the IRS for allowing a qualified plan to "defraud" its investors and for the resulting loss in the value of their IRA.  Petitioners did not discuss the medical expense issue at all.

Ms. Radford prepared an Appeals Case Memorandum on April 22, 1999, in which she recommended disallowing petitioners' medical expenses for lack of substantiation.  Petitioners provided only a typed list of expenses incurred, not actual receipts or statements as requested in the IDRs.  Ms. Radford also recommended disallowing petitioners' claimed casualty or theft

loss because petitioners still owned the property.  On May 7, 1999, respondent issued a notice of deficiency disallowing the deductions and determining a deficiency of $30,771.

C.  Petitioners' Tax Court Case

On August 9, 1999, petitioners filed a petition with this Court seeking a redetermination of the 1995 tax deficiency determined by respondent.  Prior to trial, respondent conceded the issue pertaining to petitioners' medical expenses on Schedule A.  At trial, the Court entered a decision for respondent sustaining the disallowance of the casualty or theft loss. Eberhardt v. Commissioner, T.C. Summary Opinion 2000-163. Petitioners filed a Motion for Reconsideration which was denied. Subsequently, respondent assessed the tax deficiency and interest.

D.  Respondent's Collection Efforts

On April 15, 2001, respondent withheld petitioners' 2000 Federal income tax refund of $754.22 and applied it to their outstanding 1995 tax liability.  Between April 23, 2001, and July 2, 2001, respondent mailed to petitioners three separate notices of balance due with respect to the unpaid liability.  On December 3, 2001, respondent withheld petitioners' midyear 2000 refund of $600 and applied it to petitioners' outstanding 1995 tax liability.

On February 7, 2002, respondent issued a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing (Notice of Intent to Levy), with respect to petitioners' taxable year 1995. On February 27, 2002, in response to the Notice of Intent to Levy, respondent received petitioners' Form 12153, Request for a Collection Due Process Hearing (hearing).

E. Petitioners' Section 6330 Hearing

Appeals Officer Wendy Clinger (Ms. Clinger) was assigned to handle petitioners' hearing. Petitioners met with her for their hearing on November 21, 2002.

During the hearing, petitioners disputed their underlying tax liability. Ms. Clinger advised them that they had already had an opportunity to challenge the liability when they had a trial before the Tax Court and could not do so again in the hearing. Ms. Clinger explained that petitioners could discuss the collection alternatives available to petitioners to satisfy their tax liability.

At the hearing, petitioners submitted an OIC offering $1,000 to satisfy their outstanding 1995 tax liability which totaled over $49,000, including accumulated interest. The $1,000 would be paid within 90 days of written acceptance of their OIC. Petitioners requested that their OIC be accepted in the interests of effective tax administration, or doubt as to collectibility.

In support of their grounds for effective tax administration, petitioners revisited the facts and circumstances of their prior Tax Court proceeding. Petitioners claimed that they cannot pay the tax in full because they have a substantial amount of short-term debt, the expenses of deferred maintenance on their home, and the need to fund their retirement savings over a limited number of years.

As to doubt as to collectibility, petitioners pointed to the Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, they submitted to Ms. Clinger. On their Form 433-A, petitioners indicated that they owned their home located in Riverside, California, which they valued at $350,000 with mortgages of $331,290. Petitioners also have retirement accounts valued at $24,815.65 and bank accounts valued at $606.75. Petitioners indicated that their monthly income is $10,834 and their monthly expenses are $12,571. Monthly expenses of $4,473 are attributable to petitioners' debts.

Ms. Clinger's analysis of petitioners' monthly income over allowable expenses revealed the following:

| Income | Expense Type | Allowable Expense Amount |
|--------|--------------|--------------------------|
| $10,834 | National standard[1] | $1,235 |
| | Housing & utilities | 1,223 |
| | Transportation | 1,070 |
| | Health care | 382 |
| | Taxes | 1,546 |
| | Total | 5,456 |

Ms. Clinger concluded that petitioners had the ability to pay $5,378 per month--the net difference between petitioners' monthly income and monthly allowable expenses--toward their outstanding 1995 tax liability. Petitioners declined Ms. Clinger's offer of an installment agreement. Petitioners also requested an abatement of interest on the deficiency because they feel the audit of their 1995 tax year was prolonged due to mistakes of the IRS employees who performed the audit.

Upon consideration of petitioners' submitted documentation, Ms. Clinger prepared a Form 1271-c, Rejection or Withdrawal Memorandum, recommending that petitioners' OIC be rejected. Ms. Clinger concluded that, given petitioners' available asset equity and monthly disposable income, petitioners have the ability to pay the liability in full via an installment agreement. She also noted that petitioners did not demonstrate any special circumstances or grounds for an exception for effective tax

---

[1]National standard expenses are for clothing and clothing services, food, housekeeping supplies, personal care products and services. See Schulman v. Commissioner, T.C. Memo. 2002-129 n.6.

administration.  On December 12, 2002, Ms. Clinger notified petitioners that respondent was rejecting their OIC.

On January 9, 2003, Ms. Clinger sent petitioners a Notice of Determination Concerning Collection Action Under Section 6330 sustaining respondent's proposed levy as the appropriate means of collecting petitioners' unpaid liability for the 1995 tax year. She also sent petitioners another copy of the letter rejecting their OIC.  Additionally, Ms. Clinger sent petitioners a Notice of Full Disallowance--Final Determination denying petitioners' request for an abatement of interest on their 1995 deficiency assessment.

### Discussion

Section 6330(c) prescribes the matters that a person may raise at an Appeals Office hearing.  Section 6330(c)(2)(A) provides that a person may raise collection issues such as spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection.  See Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000).  In addition, section 6330(c)(2)(B) establishes the circumstances under which a person may challenge the existence or amount of his or her underlying tax liability.  Section 6330(c)(2)(B) provides:

(2)  Issues at Hearing.--

    *     *     *     *     *     *     *

> (B) Underlying Liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

A taxpayer, however, is precluded from relitigating issues raised and considered in any previous Appeals hearing or any other administrative or judicial proceeding in which the taxpayer meaningfully participated.  Sec. 6330(c)(4); Katz v. Commissioner, 115 T.C. 329, 339 (2000).

Petitioners not only received a notice of deficiency for tax year 1995, they also litigated the matter before this Court. Therefore, they are precluded from challenging the existence or amount of their 1995 tax liability in a subsequent section 6330 hearing.  Sec. 6330(c)(2)(B).

Where, as is the case here, the validity of the underlying tax liability is not properly placed at issue, the Court will review the administrative determination of the Appeals Office for abuse of discretion.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181-183.  The Court reviews only whether the Appeals officer's refusal to accept petitioners' OIC was arbitrary, capricious, or without sound basis in fact or law. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

A.  Petitioners' Offer in Compromise

Section 7122(a) authorizes a compromise of a taxpayer's Federal tax liability.  An OIC may be accepted where there is doubt as to liability or collectibility, or where it would promote effective tax administration.  Sec. 301.7122-1(b), Proced. & Admin. Regs.

Doubt as to liability does not exist where the liability has been established by a final court decision or judgment concerning the existence or amount of the liability.  Sec. 301.7122-1(b)(1), Proced. & Admin. Regs.  Doubt as to collectibility exists in any case where the taxpayer's assets and income are less than the full amount of the liability.  Sec. 301.7122-1(b)(2), Proced. & Admin. Regs.

After reviewing petitioners' financial situation, Ms. Clinger determined that their financial situation enabled them to pay the entire tax liability within a reasonable time. Petitioners' financial information indicated that both petitioners had gainful employment and that their monthly income exceeded their necessary living expenses, thereby allowing the full payment of their liability.

If there is no doubt as to liability or collectibility, a compromise may be entered into to promote effective tax administration when collection of the full liability will create economic hardship within the meaning of section 301.6343-1,

Proced. & Admin. Regs. Sec. 301.7122-1(b)(3)(i), Proced. & Admin. Regs. Economic hardship is defined as the inability of the taxpayer to pay his or her reasonable living expenses. Sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

Factors supporting a determination that collection would cause economic hardship within the meaning of section 301.7122-1(b)(3)(i), Proced. & Admin. Regs., include, but are not limited to:

> (A) Taxpayer is incapable of earning a living because of a long term illness, medical condition, or disability, and it is reasonably foreseeable that taxpayer's financial resources will be exhausted providing care and support during the course of the condition;
>
> (B) Although taxpayer has certain monthly income, that income is exhausted each month in providing for the care of dependents with no other means of support; and
>
> (C) Although taxpayer has certain assets, the taxpayer is unable to borrow against the equity in those assets and liquidation of those assets to pay outstanding tax liabilities * * *.

Sec. 301.7122-1(c)(3)(i)(A), (B) and (C), Proced. & Admin. Regs.

Petitioners claim they cannot pay the tax in full because they have a substantial amount of short-term debt, the expenses of deferred maintenance on their home, and the need to fund their retirement savings over a limited number of years. These circumstances fall short of qualifying as economic hardship within the meaning of section 301.6343-1(b)(4), Proced. & Admin. Regs.

When there are no grounds for compromise under the provisions pertaining to doubt as to liability, doubt as to collectibility, or effective tax administration due to economic hardship, the IRS may compromise a liability to promote effective tax administration where compelling public policy or equity considerations identified by the taxpayer provide a sufficient basis for compromising the liability.  Sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs.  Compromise will be justified only where, due to exceptional circumstances, collection of the full liability would undermine public confidence that the laws are being administered in a fair and equitable manner.  A taxpayer proposing such a compromise will be expected to demonstrate circumstances that justify compromise even though a similarly situated taxpayer may have paid his liability in full.  Id.

Petitioners have failed to demonstrate that there are any circumstances showing that collection of their full liability would undermine public confidence that the tax laws are being administered fairly and equitably.  Petitioners have not shown evidence sufficient to warrant consideration of an OIC based on effective tax administration grounds.

Having reviewed the entire record, including the financial information presented to Ms. Clinger, the Court cannot find that the determination rejecting petitioners' OIC was an abuse of discretion.  See Van Vlaenderen v. Commissioner, T.C. Memo.

2003-346; <u>Crisan v. Commissioner</u>, T.C. Memo. 2003-318; <u>Willis v. Commissioner</u>, T.C. Memo. 2003-302.  Accordingly, collection by levy of petitioners' unpaid 1995 tax liability reflected in the Notice of Determination may proceed.

B.   <u>Abatement of Interest</u>

If, as part of a section 6330 hearing, a taxpayer makes a request for abatement of interest, the Court has jurisdiction over the request for abatement of interest that is the subject of the Commissioner's collection activities.  <u>Katz v. Commissioner</u>, 115 T.C. at 340-341.

This Court may order an abatement of interest only if there is an abuse of discretion by the Commissioner in failing to abate interest.  See sec. 6404(i) (formerly sec. 6404(g)).  In order to demonstrate an abuse of discretion, a taxpayer must prove that the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law.  See Rule 142(a); <u>Lee v. Commissioner</u>, 113 T.C. 145, 149 (1999); <u>Woodral v. Commissioner</u>, 112 T.C. at 23.

Under preamendment section 6404(e),[2] the Commissioner "may abate the assessment of interest on any payment of tax to the extent that any error or delay in payment is attributable to an officer or employee of the IRS being erroneous or dilatory in performing a ministerial act." Lee v. Commissioner, supra at 148. A ministerial act does not include a "decision concerning the proper application of federal tax law (or other federal or state law)". Sec. 301.6404-2(b)(2), Proced. & Admin. Regs.

An error or delay by the Commissioner can be taken into account only if: (1) It occurs after the Commissioner has contacted the taxpayer in writing with respect to the deficiency, and (2) no significant aspect of the error or delay is attributable to the taxpayer. See sec. 6404(e)(1); Krugman v. Commissioner, 112 T.C. 230, 239 (1999); Hawksley v. Commissioner, T.C. Memo. 2000-354. Section 6404(e)(1) "does not therefore permit the abatement of interest for the period of time between the date the taxpayer files a return and the date the IRS commences an audit, regardless of the length of that time

---

[2]Sec. 6404(e) was amended under sec. 301 of the Taxpayer Bill of Rights 2, Pub. L. 104-168, 110 Stat. 1457 (1996), to permit the Secretary to abate interest with respect to an "unreasonable" error or delay resulting from "managerial" and ministerial acts. This amendment, however, applies to interest accruing with respect to deficiencies or payments of tax for years beginning after July 30, 1996; therefore, the amendment is inapplicable to the case at bar. See Woodral v. Commissioner, 112 T.C. 19, 25 n.8 (1999).

period."  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.

Petitioners request abatement partly because respondent did not notify them that their return had been selected for examination until September 23, 1997.  They argue that such a length of time constitutes a ministerial error by respondent and warrants an abatement of interest.

For purposes of section 6404(e), an error or delay cannot be considered for the period before September 23, 1997, because that is the date on which respondent first contacted petitioners in writing regarding the deficiency for 1995.  See sec. 6404(e); Krugman v. Commissioner, supra at 239; Nerad v. Commissioner, T.C. Memo. 1999-376.

Petitioners also assert that the audit was unreasonably lengthy because several different IRS employees participated in the audit.  There is no evidence in the record that any of the employees assigned to petitioners' audit mishandled any portion of the audit.  There were no significant delays by respondent replying to contacts or correspondence from petitioners.  The greatest delays came in petitioners' responses to respondent's document requests.

Respondent's decisions on how to proceed during the audit necessarily required the exercise of judgment and thus cannot be ministerial acts.  Additionally, the mere passage of time does

not establish error or delay by the Commissioner in performing a ministerial act.  <u>Lee v. Commissioner</u>, <u>supra</u> at 150.  The Court, therefore, concludes that the passage of 19 months during the audit of petitioners' 1995 tax year is not attributable to error or delay in performing a ministerial act.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent</u>.