T.C. Summary Opinion 2010-43


UNITED STATES TAX COURT


PAMELA L. JOHNSON-THOMAS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4330-08S.              Filed April 13, 2010.


Pamela L. Johnson-Thomas, pro se.

<u>Ronald S. Collins, Jr.</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent

section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

On January 18, 2008, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination). Respondent issued a supplemental notice of determination on February 12, 2009. The notice of determination and supplemental notice of determination disallowed petitioner's claim for interest abatement with respect to her unpaid 1988 and 1989 Federal income tax liabilities (income tax liabilities). The issues for decision are whether respondent abused his discretion in denying petitioner's request for interest abatement under section 6404(e) and sustaining the proposed collection action with respect to petitioner's income tax liabilities.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. When petitioner filed her petition, she resided in Pennsylvania.

Petitioner did not timely file a return for 1988 or 1989. She filed her 1988 Federal income tax return on June 1, 1990, and her 1989 Federal income tax return on July 7, 1995. She reported

a tax liability of $2,479 for 1988 and $469[1] for 1989 but did not remit payment with her returns.

## I. Bankruptcy

Petitioner filed for bankruptcy during the 1990s on two separate occasions. On July 3, 1991, she filed her first petition for bankruptcy, but it was dismissed on October 26, 1992. On June 17, 1993, she filed her second petition, and on December 2, 1996, the bankruptcy court dismissed the petition due to an apparent misfiling. Neither bankruptcy case resulted in the discharge of her income tax liabilities.

## II. Installment Agreement

In 1993[2] petitioner entered into an installment agreement to pay her unpaid Federal payroll tax liability for her 1988 Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return

---

[1]At trial petitioner contested this amount. She offered what purported to be the second page of a 1989 Federal income tax return indicating that she reported zero tax due for 1989. However, the validity of the copy of the "return" she provided at trial is highly questionable. The Court finds that petitioner reported a tax of $469 as shown in the certified Form 4340, Certificate of Assessments, Payments, and Other Specified Matters. In addition, petitioner failed to contest her 1989 underlying tax liability at the collection due process hearing and is foreclosed from doing so here. A taxpayer must raise an issue at a collection due process hearing to preserve it for this Court's consideration. Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs.

[2]The record is unclear as to when petitioner entered into the installment agreement. As early as Jan. 1, 1993, petitioner made a payment pursuant to an installment agreement for her 1988 business tax liability. The Court hereinafter refers to the installment agreement as entered into in 1993.

(business tax liability).  Petitioner continued to make payments under this installment agreement and eventually satisfied her business tax liability in 1999 or 2000.

## III.  Personal Income Tax Liabilities

Some time before 2000, petitioner realized that her outstanding income tax liabilities remained unpaid.[3]  Petitioner contacted the Internal Revenue Service (IRS) to determine the amount of her outstanding liabilities so that she could begin making payments.  She alleges that she was prevented from making payments because each time she contacted the IRS, the IRS was unable to find her account.[4]

On October 2, 2001, petitioner filed a Form 911, Application for Taxpayer Assistance Order, requesting assistance from the IRS Taxpayer Advocate Service (TAS).[5]  TAS advised petitioner to file an offer-in-compromise (offer) to settle her 1988 and 1989 income tax liabilities.  Petitioner filed two offers with respondent,

---

[3]Form 4340 indicates that on Jan. 1, 2000, petitioner entered into an installment agreement for her unpaid 1988 and 1989 Federal income tax liabilities.  The Form 4340 shows no payments pursuant to this installment agreement and a reversal of the installment agreement more than 2 years later.  The parties made no reference to the existence of this installment agreement.

[4]When petitioner filed her 1988 and 1989 returns, she filed under her former name, Butts.  In 1992 her name was changed because of a change in marital status.

[5]At this time petitioner was aware of the purported problem associated with finding her account; i.e., the requirement that an asterisk follow her Social Security number.

but respondent rejected both offers.  She then requested and respondent denied an abatement of interest associated with her income tax liabilities.

On April 26, 2005, respondent issued a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing (Final Notice).  Petitioner timely filed Form 12153, Request for a Collection Due Process Hearing, requesting a face-to-face hearing.  Respondent received petitioner's request and advised petitioner that her request was being processed. Respondent then transferred petitioner's case to the Philadelphia Appeals Office on July 20, 2005.

When petitioner's case arrived at the Philadelphia Appeals Office on August 22, 2007, respondent assigned her case to settlement officer Robert Richards (SO Richards).  SO Richards met with petitioner on December 12, 2007, and discussed petitioner's interest abatement request.  Petitioner did not dispute her underlying tax liabilities and did not request or present collection alternatives.  Her only argument was directed at the abatement of interest.

Respondent issued to petitioner a notice of determination denying petitioner's request for interest abatement and sustaining the collection action.  Petitioner timely filed a petition with this Court contesting the determination.

## Discussion

Under section 6320(a) the Secretary is required to notify the taxpayer in writing of the filing of a Federal tax lien and inform the taxpayer of his right to a hearing.  Section 6330(a) similarly provides that no levy may be made on a taxpayer's property or right to property unless the Secretary notifies the taxpayer in writing of his right to a hearing before the levy is made.  If the taxpayer requests a hearing under either section 6320 or 6330, a hearing shall be held before an impartial officer or employee of the IRS Office of Appeals.  Secs. 6320(b)(1), (3), 6330(b)(1), (3).  At the hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives.  Sec. 6330(c)(2)(A).  A taxpayer is precluded from contesting the existence or amount of the underlying tax liability unless the taxpayer did not receive a notice of deficiency for the tax in question or did not otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, the Appeals Office must determine whether the Secretary may proceed with the proposed collection action.  In so doing, the Appeals Office is required to consider: (1) The verification presented by the Secretary that the

requirements of applicable law and administrative procedure have been met; (2) the relevant issues raised by the taxpayer; and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with a taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3).

Where a taxpayer makes a request for an abatement of interest in an Appeals hearing, the Court has jurisdiction to review the determination of the Appeals Office pursuant to section 6330(d)(1). See sec. 6404(e); Katz v. Commissioner, 115 T.C. 329, 340-341 (2000).

For tax years beginning before July 31, 1996, section 6404(e)(1) provided in pertinent part that the Secretary may abate the assessment of interest on: (1) Any deficiency attributable to any error or delay by an officer or employee of the IRS in performing a ministerial act;[6] or (2) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act. A ministerial act is a procedural or mechanical act that does not involve the exercise of judgment or discretion by the

---

[6]Petitioner does not have a deficiency, but rather an underpayment of tax. See secs. 6211, 6404(e)(1)(A). Therefore, petitioner's interest abatement claim will be determined under sec. 6404(e)(1)(B). See secs. 6211, 6212(a).

Commissioner.  Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).  Section 6404(e) affords a taxpayer relief only if no significant aspect of the error or delay can be attributed to the taxpayer and only after the Commissioner has contacted the taxpayer in writing about the deficiency or payment in question.  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844 ("This provision does not therefore permit the abatement of interest for the period of time between the date the taxpayer files a return and the date the IRS commences an audit, regardless of the length of that time period.").

The Commissioner's authority to abate interest involves the exercise of discretion, and we must give due deference to the Commissioner's exercise of discretion.  See sec. 6404(h); Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Mailman v. Commissioner, 91 T.C. 1079, 1082 (1988).  To prevail, a taxpayer must prove that the Commissioner abused his discretion by exercising it arbitrarily, capriciously, or without sound basis in fact or law. See sec. 6404(h)(1); Rule 142(a); Woodral v. Commissioner, supra at 23; Mailman v. Commissioner, supra at 1084.  The mere passage of time does not establish error or delay in performing a ministerial act.  See Cosgriff v. Commissioner, T.C. Memo. 2000-241 (citing Lee v. Commissioner, 113 T.C. 145, 150 (1999)).

The Court discusses below the relevant periods in determining whether respondent abused his discretion in refusing to abate interest accruals on petitioner's income tax liabilities.[7]

## I. January 1, 1997 Through October 1, 2001

Petitioner alleges that after her second bankruptcy case was dismissed, she entered into an installment agreement in January 1997 with the IRS and requested that the installment agreement include both her income tax and business tax liabilities.

Although petitioner alleges that respondent's failure to include all her liabilities in the alleged 1997 installment agreement contributed to a delay in payment, there is no credible evidence beyond petitioner's testimony that she entered into an installment agreement in 1997. The record indicates that petitioner entered into only one installment agreement, the 1993 installment agreement, solely in satisfaction of her business tax liability. After her second bankruptcy case was dismissed in

---

[7]The Court finds that respondent did not abuse his discretion in refusing to abate interest between the time petitioner filed her 1988 and 1989 returns and the time she allegedly entered into an installment agreement in 1997. Petitioner's nonpayment of her income tax liabilities during this time was due in substantial part to her own acts. She was in bankruptcy for most of this time, she untimely filed both returns, and she has failed to identify any ministerial act on the part of the IRS that led to a delay in the payment of her income tax liabilities.

December 1996, petitioner had an opportunity but chose not to make payments towards her income tax liabilities.

Petitioner further testified that around 2000 she began receiving notices from the IRS addressing her with different names regarding her 1988 and 1989 income tax liabilities.[8] Petitioner alleges that she contacted the IRS to determine her correct liability but that the IRS was unable to find her account.  Beyond testifying that the IRS was unable to find her account, petitioner did not provide any further explanation of the substance of her conversations with the IRS agents. Specifically, petitioner did not clarify whether she explained the full extent of her circumstances to the IRS agents, i.e., that she had filed the returns at issue using her former name, that her name had subsequently changed because of a change in marital status, and that she had received correspondence from the IRS using different names.  Accordingly, the Court is unable to conclude that any delay in payment on petitioner's account was not due in significant part to petitioner's own acts.  See Urban Redev. Corp. v. Commissioner, 294 F.2d 328, 332 (4th Cir. 1961) (the Court may reject a taxpayer's uncorroborated, self-serving testimony), affg. 34 T.C. 845 (1960); Tokarski v. Commissioner,

---

[8]At trial petitioner appeared confused as to why she would receive correspondence from the IRS under different names.  As discussed supra, however, petitioner filed her 1988 and 1989 returns under her former name, Butts.

87 T.C. 74, 77 (1986) (same).  The Court finds that respondent did not abuse his discretion in refusing to abate interest on petitioner's income tax liabilities from January 1, 1997, through October 1, 2001.

II.  <u>October 2, 2001 Through April 25, 2005</u>

On October 2, 2001, after discovering the alleged problem associated with her account, petitioner filed a Form 911.

On August 27, 2002, and October 21, 2003, petitioner filed offers with respondent; however, respondent rejected both offers. After these unsuccessful attempts to settle her tax liabilities, on September 21, 2004, petitioner requested that respondent abate the accrued penalties and interest on her income tax liabilities. On February 9, 2005, respondent granted petitioner's request for abatement of penalties but denied the interest abatement request.

Despite petitioner's assertion that respondent's delays contributed to unnecessary interest accruals, the record includes evidence to the contrary.  From October 2, 2001, through April 25, 2005, the parties engaged in extensive communications regarding petitioner's 1988 and 1989 income tax liabilities followed by petitioner's pursuit of collection alternatives. There is no evidence of an IRS error or delay in the performance of a ministerial act.  Accordingly, the Court finds that respondent did not abuse his discretion in refusing to abate interest from October 2, 2001, through April 25, 2005.

III.  April 26, 2005 Through August 22, 2007

On April 26, 2005, respondent issued a Final Notice to petitioner for her 1988 and 1989 income tax liabilities.  Upon receiving it, petitioner timely filed a Form 12153, requesting a face-to-face hearing.  Respondent received petitioner's request and notified petitioner on May 12, 2005, that her hearing request was being sent to Appeals for consideration.

When the IRS receives a Form 12153, the running of the period of limitations on collection for the tax year at issue is suspended.  See secs. 6330(e), 6502.  The IRS records the suspension of the limitations period by posting the appropriate codes to the taxpayer's account.  Respondent attempted to record the suspension of the limitations period following receipt of petitioner's request for a hearing.  The record indicates, however, that when respondent attempted to post the codes to petitioner's account, the codes "went unpostable" for the 1988 and 1989 tax years.  The unpostables seemed to prevent any further action on petitioner's request for a hearing.  The problem continued and was indicated on case activity records until October 25, 2005.  From October 26, 2005, through July 19, 2007, there is no indication that respondent was processing or otherwise working on petitioner's request for a hearing.[9]

_____

[9]On Aug. 20, 2007, the activity record indicated that because of problems with unpostable TC 971 AC 069 and TC 520
(continued...)

Finally on August 22, 2007, the Philadelphia Appeals Office received petitioner's hearing request and respondent assigned the case to SO Richards.

For over two years petitioner's hearing request was put on hold as a result of respondent's inability to post codes to petitioner's account. Although this contributed to a significant delay in the processing of petitioner's hearing request, there is no indication that this delay caused petitioner to delay in making payments. She was aware of her income tax liabilities and chose to forgo making payments on her reported income tax liabilities to pursue alternative avenues of relief. Therefore, respondent's refusal to abate interest during this time was not an abuse of discretion.

In summary, respondent did not abuse his discretion in refusing to abate interest, and the Court sustains respondent's determination in full. Additionally, because petitioner did not present viable alternatives to collection, the Court finds that respondent's determination to sustain the intended collection action was not an abuse of discretion. See Premium Serv. Corp. v. Sperry & Hutchinson Co., 511 F.2d 225, 229 (9th Cir. 1975).

---

[9](...continued)
codes, the case was sent to the Kansas office for resolution. When it was returned, the problem with unpostables remained, so it was sent back to the Kansas office. The case remained in the Kansas office for a year and a half. There is no indication as to why the task of posting codes to petitioner's account resulted in such a delay in the processing of her Appeals request.

To reflect the foregoing,

Decision will be entered

for respondent.